Whitaker, Judge,
delivered the opinion of the court:
This suit is to recover damages-for delays and for the cost of extra work alleged to have been done in connection with the construction of a Post Office and Court House at Davenport, Iowa.
1. Defendant’s .first defense is that the claim is barred by the statute of limitations.* The building was occupied by the defendant on September 21, 1933, and on that date the-work was complete except for remedying certain defects, including those in the panelling of the courtroom. All defects, were corrected to the satisfaction of the defendant in the fall of 1935. Final voucher was signed by plaintiff on July 20, 1936, which was paid shortly thereafter. This suit was. not filed until April 5, 1941, about seven and one-half years after substantial completion of the building and about five- and one-half years after the building had been finally accepted. The defendant says that the statute began to run on the date the defendant occupied the building, but it is clear-under our decisions that it did not begin to run until the-work was finally completed and final voucher was presented.. Pink v. United States, 85 C. Cls. 121; Austin Engineering Co. v. United States, 88 C. Cls. 559.
*236 Although, plaintiff is not barred by the statute, its long delay in making claim needs explanation, and none is offered. Plaintiff signed its final voucher on July 20,1936; neither at that time nor since has it presented any demand to any of defendant’s administrative officers. They had no inkling that plaintiff thought it had a claim until this suit was filed, nearly six years later. Had plaintiff believed it had a meritorious claim, it would seem it would have presented it when it signed its final voucher, or if not then, certainly long-before it did. This casts on plaintiff a somewhat heavier ■burden in proving its case than usual.
2. Plaintiff’s first claim is for delays in furnishing models for bronzework, for stonework and for woodwork. The testimony relative thereto is very unsatisfactory. Plaintiff did .not put on the stand its superintendent who was on the job until it was almost finished, a Mr. "Urban — perhaps because he was not readily available — but sought to prove its case, first, by its president, who could give practically no testimony except from records or from what someone had told him, and, second, by what it calls its contract engineer, who handled the home office end of the job and who toward the end of the job succeeded Mr. Urban as superintendent.
We have reviewed this testimony and we agree with the commissioner that from it we cannot determine how much of the delay in the stonework was due to the defendant’s failure to furnish models promptly and how much was due to the delay of plaintiff’s subcontractor; and it is also impossible to tell how much the delay in furnishing models for the woodwork delayed the completion of the building.
Nor, omitting for the moment the contracting officer’s letter ■of January 10,1934, are we satisfied with the proof as to the extent of the delay in furnishing models for the bronze spandrels. Plaintiff says it was ready for the spandrels on November 29, 1932, but that they did not arrive until January 18,1933. On this proof alone it bases its claim of a delay ■of 50 days. This proof is not sufficient to show a delay in final completion of 50 days; certainly it is not sufficient to show defendant caused it. There is no proof the work was at a standstill during this time, nor the extent to which it was ¡slowed down; on the contrary, plaintiff’s president said that *237 “we used a little ingenuity and got around the fact that we were delayed on the spandrels.” He was asked, “Do you think the erection of that wall was delayed fifty days because you ■did not have the spandrels.” He answered, “Evidently it was not because we went past it.” He would not hazard a .guess as to how much they were delayed.
There is no other proof of the extent of the delay, unless .it is the letter of the supervising architect of January 10, 1934, on which plaintiff relies to show a delay of not less .than 25 days.
On October 25,1933, plaintiff wrote the supervising architect requesting an extension of 50 days due to the delay in .the delivery of the spandrels. On January 10, 1934, the ^supervising architect replied in part as follows:
* * * We do not have knowledge as to how much the •delay with regard to the spandrels affected the entire .completion of the building but as there was a slowing up of the work between the last of November and January of about 5%, it is considered that the contract as .a whole was delayed for twenty-five . (25) days, due note of which will be made at time of final settlement.
As defendant says, this is not a finding that the completion >of the building was delayed 25 days on account of delay in the delivery of the spandrels, nor is it a finding that the •defendant was responsible for any delay, there may have Teen. The supervising architect expressly says, “We do mot have knowledge as to how much the delay with regard ;to the spandrels affected the entire completion of the build.ing.” Without this knowledge he could make no finding on the extent of the delay due to the tardy delivery of the -spandrels, and he does not undertake to do so. He says there was. a delay of 25 days because “there was a slowing up of the work between the last of November and January of about 5%.” Why there was a slowing up, he does not say, but he does say he does not know how much of it was .caused by delay in delivery of the spandrels.
We know there was some delay due to rain and cold weather during this time and we know the contractor was claiming a delay during this period on account of defendant’s ■delay in furnishing the models for certain stonework. Some *238 or all these things may have contributed to a slowing up of the work. Some or all of them the supervising architect may have taken into consideration. At any fate, he expressly refuses to place the cause of the delay on the tardy arrival of the spandrels alone.
Moreover, the supervising architect does not find whether their tardy arrival was due to defendant’s delay in furnishing plaintiff’s subcontractor with the models or was due to the subcontractor’s delay in fabricating the stone.
There is no proof as to the extent of the delay, if any, caused by defendant’s tardiness in furnishing the models for these spandrels. Plaintiff is not entitled to recover on this claim.
3. Plaintiff’s second claim is for the cost of a new cable to connect electroliers placed in the sidewalk in the front of the building. The supervising architect ruled that paragraph 1373 of the specifications required plaintiff to do this. Paragraph 28 of the specifications provides:
The decision of the contracting officer or his authorized representative as to the proper interpretation of the drawings and specifications shall be final. * * *
Therefore, under Plumley v. United States, 226 U. S. 545, there can be no recovery on this claim.
4. The third claim is abandoned by plaintiff.
5. Plaintiff’s fourth claim is for carving required on the stone work alleged to be in addition to that required by the contract drawings.
The contract drawings showed this carving in small scale. Later, after plaintiff had sublet this part of the contract, the defendant furnished plaintiff detailed drawings and models for the stonework. Plaintiff claims that models “A,” “B,” “C,” and “D” (sometimes designated as models 1, 2, 3 and 4) required work in addition to that shown or indicated on the contract drawings. Claim therefor was submitted to the supervising architect on October 10,1932. On November 9, 1932, the supervising architect ruled that models “A” and “C” came within the provisions of paragraph 23 of the specifications, reading in part, “The general character of the detail work is shown on the contract drawings, but minor *239 modifications may be made in the full size drawings or models:” As to model “B,” or 2, be said, “it appears that additional members have been added, necessitating additional work on the part of your subcontractor. A proposal covering additional work in connection with model No. 2 will be considered upon presentation.”
Plaintiff submitted a proposal of $1,287.92 on April 19, 1933, for the extra work required by model No. 2. No action was taken on this until September 18,1933, after the work had been done. On this date the supervising architect wrote plaintiff in part:
You are advised that this matter was submitted for consideration under the provisions of section 320 of the Economy Act, but approval has been withheld and your proposal is therefore rejected.
Section 320 of the Economy Act of June 30,1932 (47 Stat. 382, 412) reads:
Authorizations heretofore granted by law for the construction of public buildings and public improvements, whether an appropriation therefor has or has not been made, are hereby amended to provide for a reduction of . 10 per centum of the limit of cost as fixed in such authorization, as to projects where no contract for the construction has been made. As to such projects where a contract has been made at a cost less than that upon which the authorization was based, such cost shall not, unless authorized by the President, be increased by any changes or additions not essential for the completion of the project as originally planned.
The defendant sayo this action of the supervising architect in rejecting the claim is final under paragraph 28 of the specifications, since no appeal therefrom was taken to the head of the department. Paragraph 28 of the specifications makes the contracting officer’s interpretation of the drawings and specifications final. This interpretation he gave November 9,1932, holding that model No. 2 did require additional work. His letter of September 18,1933, rejecting the claim, was not an interpretation of the drawings or specifications, but was a construction of section 320 of the Economy Act. On such matters he is not the final arbiter, nor is the head of the department.
*240 Article 15 of the contract makes the decisions of the contracting officer final on “all disputes concerning questions of fact arising under this contract,” subject to appeal. Whether section 320 of the Economy Act barred plaintiff from being paid the cost of doing this admittedly additional work was neither a question of fact nor a dispute “arising under this contract.” Defendant did not deny plaintiff was entitled to additional compensation under the contract; it admitted it was, but it asserted that section 320 of the Economy Act prevented its being paid. Such a decision is not binding on the parties nor on us.
Defendant does not dispute the amount of plaintiff’s bill.
Plaintiff is entitled to recover on this claim the sum of $1,287.92. Judgment against the defendant will be rendered therefor. It is so ordered.
MaddeN, Judge; LittletoN, Judge; and Whaley, Chief Justice, concur.
JoNes, Judge, took no part in the decision of this case.

36 Stat. 1139 ; U. S. Code, Title 28, section 262.