While the Army made no repairs during its period of occupancy, and no agreement was ever reached as to what repairs the Army should be required to make, the Army did, prior to relinquishing possession, make repairs for which it considered itself obligated at a cost of $2,425. The parties have now agreed that the repairs so made cover all items of plaintiffs' claim except the restoration of the storm damage.

The storm of August 1, 1944, was a severe one, and while it is not disputed that plaintiffs' pier was well constructed, the damage which it sustained was similar to the damage sustained by every other fishing pier on this section of the coast.

Plaintiffs place great weight on the testimony of a Mr. Kure who was the pioneer of the locality in the construction and maintenance of fishing piers. His own pier was swept away by the storm on August 1. He testified that if plaintiffs' pier had been kept in proper repair during the period of the lease it would have withstood the storm. He further testified however that the hurricane of August 1, 1944, was the worst storm he had experienced in his 40 years in the area. When considered in the light of this admission his testimony loses much if not all its weight.

■ The evidence fails to support plaintiffs' contentions that their pier had been materially weakened because of its alleged misuse by soldiers and from being struck by stray bullets. Even if so found, it would fail to detract from the ultimate conclusion that the proximate and sole cause of the damage complained of here was the hurricane. The commissioner so found, and a consideration of plaintiffs' exceptions fails to convince us that this finding is not correct.

■ Since the lease relieved the Government from responsibility for damages caused "by the elements or by circumstances over which [it] has no control", we find that there is no liability chargeable to the defendant on plaintiffs' claim for damages by reason of defendant's refusal to make further repairs. Plaintiffs' petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.

G. M. McWILLIAMS, Trustee in Bankruptcy for F. T. Newton for His Own Use and for the Use of National Surety Corporation,

v.

The UNITED STATES.

No. 49439.

United States Court of Claims.

March 6, 1956.

Emanuel Harris, New York City, for plaintiff. Bernard J. Gallagher, Washington, D. C., and Max E. Greenberg, New York City, were on the briefs.

LeRoy Southmayd, Jr., with whom was George S. Leonard, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

In this case the defendant admits that there is due the plaintiff, G. M. McWilliams, Trustee in Bankruptcy, the sum of $6,288, representing the balance—unused balance—on the contract made September 6, 1943, with one F. T. Newton for the construction of a building at Tallahassee, Florida. The facts relative to the contract, the work thereon and the default of contractor Newton on November 5, 1943, are shown in findings 4 and 5. The only defense is the statute of limitation.

The commissioner of this court has made detailed findings on the stipulation of the parties, supplemented by evidence offered by the parties. These findings are fully supported by the record and we approve and adopt them.

The petition herein was filed on January 13, 1950. The defendant says that inasmuch as defendant completed the contract work on or before January 1, 1944, at a cost of $1,334.88, and thereafter made a determination of such costs, the cause of action accrued on January 1, 1944.

The uncontroverted facts show the defendant did not advise the contractor or his representative or the use plaintiff, National Surety Corporation, which had paid $3,811.43 to various creditors of the contractor under a payment bond, of the cost of completion and the balance due ·from the Government on the contract price until after January 14, 1944. See findings 15–24. The National Surety Corporation was diligent in its efforts to ascertain from the proper Government officials the cost of completion and the balance due under the contract, if any, but was unable to get this information prior to. January 14, 1944. It appears from the evidence that neither the Trustee in Bankruptcy nor the National Surety Corporation was able to ascertain from defendant the cost of completion and the balance due until a date which was within a period of six years prior to the filing of the petition herein. The Trustee was appointed in December 1945.

The National Surety Corporation was not in a position to bring suit on January 1, 1944, or prior to January 14, 1944, as claimed by defendant. Nor was the defaulting contractor Newton in a position to do so.

The contract and the circumstances obviously required the Government officials to determine the cost of completion and the balance due under the contract to the original contractor, or the National Surety Corporation, or the Trustee, and to notify the proper party or parties to that effect. They did not do so. The claim was not, therefore, barred by the statute when the petition was filed in this court.

The plaintiff, G. M. McWilliams, Trustee in Bankruptcy, is therefore entitled to recover $6,288, of which sum the amount of $3,811 is for the "use plaintiff," the National Surety Corporation, as hereinbefore stated and as shown in the findings. See findings 8 and 25.

Judgment will be entered in favor of the plaintiff for $6,288.

It is so ordered.

JONES, Chief Judge and LARAMORE, MADDEN and WHITAKER, Judges, concur.

### Findings of Fact

\* \* \* \* \* \*

4. F. T. Newton entered upon the performance of the contract but failed to complete the performance of the con-

tract on or before October 15, 1943. Accordingly, the defendant, under date of November 5, 1943, terminated the contract pursuant to the provisions of Article 9 thereof and undertook completion of the construction contemplated by the contract.

5. On or prior to January 1, 1944, the defendant completed all work required for the satisfactory final accomplishment of the contract at a cost to the defendant of $1,334.88.

\* \* \* \* \* \*

8. On February 18, 1944, the National Surety Corporation deposited the sum of $3,811.43 under the payment bond in the United States District Court for the Northern District of Florida, in an action instituted in that court by various creditors upon the payment bond. A final decree in that action, dated August 7, 1944, released and discharged the National Surety Corporation from any and all liability to the various creditors by virtue of the payment bond and a pro rata distribution was directed in favor of the creditors.

\* \* \* \* \* \*

14. On July 22, 1954, Keen, O'Kelley & Spitz, attorneys, successors to Keen & Allen, advised Max E. Greenberg, attorney for National Surety Corporation, that they could not locate any record which would enable them to answer inquiry as to the date when their representative called on Captain Metzger as stated in the letter of January 19, 1944, or any other record which would add to the information contained in such letter.

15. F. T. Newton, the contractor, received no notice from the United States or anyone else prior to January 14, 1944, of the cost of the completion of the contract by the Government or of the determination of the final amount due on the said contract for the unpaid balance thereof, or of any final settlement of said contract.

16. National Surety Corporation received no notice prior to January 14, 1944, from the United States, the War Department, any other agency of the United States or anyone else, of the cost of completion of the said contract by the Government or of the determination of the final amount due or the unpaid balance thereof or of any final settlement of the contract.

17. On September 26, 1947, Colonel Homer B. Pettit, Corps of Engineers, Chief Legal Division, wrote National Surety Corporation, in response to an inquiry as to the amount due under the said contract, that the contract was under the jurisdiction of the Commanding General, Third Army, Atlanta, Georgia, that the inquiry had been transmitted to that officer and, as to payments under the contract, he suggested that the National Surety Corporation contact the General Accounting Office in St. Louis, Missouri.

18. On December 16, 1947, the National Surety Corporation, by F. I. Tennyson, wrote to the Comptroller General stating that it had made numerous efforts to obtain information concerning the status of the contract and had been advised by the General Accounting Office that part of the file had been located, but that he could not give any information as to the financial status of the contract without the consent and approval of the General Counsel, E. L. Fisher, and that Mr. Fisher suggested writing to him outlining the facts of the case and that he would then give the matter further consideration.

19. On January 23, 1948, the Acting Comptroller General wrote National Surety Corporation that its letter of December 16, 1947, was being transmitted to the Claims Division of the Office of the Comptroller General for consideration as a claim.

20. On May 12, 1948, National Surety Corporation, by F. I. Tennyson, wrote the Comptroller General requesting advice as to the status of the matter.

On June 11, 1948, the Claims Division of the General Accounting Office, Washington, D. C., wrote National Surety Corporation that the Department of the Army had been called upon for an ad-

866

ministrative examination and report concerning the default of the contractor, as well as the facts recording the completion of the work, etc. that the Department had encountered difficulties in locating the permanent records and to date had failed to furnish the required report upon the basis of which the General Accounting Office could take settlement action; that the latest request for a specific report in connection with the case was made to the Department on May 13, 1948; that no response thereto had been received and that until such time as the necessary development was completed, the General Accounting Office would not be in a position to take final settlement action on the Surety's claim.

21. On August 19, 1948, the Claims Division of the General Accounting Office wrote National Surety Corporation that action on the claim was being held in abeyance pending receipt of a report from the Department of the Army, that the Department was making every effort to locate the records upon which to base the report and there was nothing that National Surety Corporation could do to expedite the matter.

22. No administrative determination or the balance due on the contract was communicated to the contractor of the Surety prior to January 14, 1944.

No final settlement was made on the contract prior to January 14, 1944.

No final settlement on the contract was ever filed in the General Accounting Office and no final settlement was made by that agency.

23. Neither the contractor nor the Surety was in a position to make demand for the balance due on the contract prior to January 14, 1944, and were without information as to the unpaid balance on the contract for which claim could be made by them.

24. It has been agreed by the parties that the amount earned by Newton and the unpaid balance due under the contract, after deducting the cost of completion by the defendant, is $6,288.00. The National Surety Corporation has paid out the sum of $3,811.00 under the payment bond.

25. No part of the unpaid balance on the contract in the sum of $6,288.00 has been paid by the defendant to Newton or to the plaintiff, G. M. McWilliams, Trustee in Bankruptcy for Newton, or to the use plaintiff, National Surety Corporation.

\* \* \* \* \* \*

Harris D. HINELINE
v.
The UNITED STATES.
No. 49418.

United States Court of Claims.
March 6, 1956.

John Price Wetherill, Washington, D. C., for plaintiff.

T. Hayward Brown, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues for compensation for the infringement of its patent Number