Per Curiam;
In June 1954 plaintiff made a contract to deliver 662 reel units and ancillary items to the Army Signal Supply Agency. All units were delivered by April 1959. Previously there had been some disputes between the parties and changes resulting in increases in the contract price, which the plaintiff was paid. The present suit, begun on August 17,1966, asserts that the drawings and specifications were defective, and that the contractor was caused undue delay and expense (above and beyond the amount already paid) by defendant’s changes and conduct. The Government moves to dismiss on the ground that the action is barred by •the six-year statute of limitations, 28 U.S.C. § 2501. We hold that the Government is correct.
All mandatory administrative proceedings, relating to the alleged changes, were completed considerably more than *930 six years prior to suit; the delivery of the items was likewise finished before August 1960. The only formal administrative relief pursued during the six-year period prior to August 17, 1966, was plaintiff’s request for extraordinary extra-contractual relief under Public Law 85-804, the Act of August 28, 1958, 72 Stat. 972, 50 TJ.S.C. §§ 1431-35 (the successor of the First War Powers Act). See United States v. Utah Constr. & Mining Co., 384 U.S. 394, 413-14 (1966). This was a wholly voluntary, optional remedy, available to the plaintiff solely at its election, and did not prevent the limitations period from commencing, or toll or extend it in any way. See Crown Coat Front Co. v. United States, 386 U.S. 503 (1967); Nager Electric Co. v. United States, 177 Ct. Cl. 234, 240-41, 242, 368 F. 2d 847, 852, 853 (1966); Friedman v. United States, 159 Ct. Cl. 1, 11-12, 310 F. 2d 381, 388 (1962), cert. denied, 373 U.S. 932 (1963). Plaintiff also cites various settlement negotiations with Government officials which took place during the six-year span prior to suit. But it is established that voluntary settlement negotations have no effect on the running of the statute of limitations once it has begun. Nager Electric Co. v. United States, supra; Cohen, Goldman & Co. v. United States, 77 Ct. Cl. 713, 730 (1933); Cuban Truck & Equipment Co. v. United States, 166 Ct. Cl. 381, 391, 333 F. 2d 873, 879 (n. 15) (1964), cert. denied, 382 U.S. 844 (1965). And as the last-cited case shows, no estoppel is erected against the United States, prohibiting it from pleading limitations, because Government representatives engage optimistically in negotiations and may even indicate that a settlement is likely or should be made. Nor is there any reasonable ground for finding that, in this case, the defendant admitted or reaffirmed liability (on the claims in suit) within the six-year period. At the most, the facts which plaintiff offers to prove amount to no more than tentative expressions by federal officials, in the course of negotiations on the contractor’s request for extra-contractual relief under Public Law 85-804, that plaintiff might well be entitled to some of that special monetary assistance. But there is no adequate allegation or offer to show that the contracting officer, or any other authorized representative of the Government, definitely conceded that plaintiff was *931 entitled to further monies under the provisions of the contract or because of -a breach of the contract.[1]
Another event within the six-year period on which plaintiff relies is the defendant’s payment on August 31, 1960, under the contract’s price redetermination clause, of a price increase for the contract articles. This increase was paid pursuant to a supplemental agreement (Modification No. 18) entered into by August 1,1960 (it was dated July 20,1960). The additional sum claimed by this agreement ($23,171.48, less a small credit) was paid by the Government on August 31,1960 — two weeks within the limitations period. This payment had nothing to do with the claims now before us — all of which rest on circumstances and events occurring well before I960 — but plaintiff argues that it served to defer the beginning of limitations on any claim relating to this contract until at least August 31, 1960. In support of this position, plaintiff argues that if the defendant had not made payment under this supplemental agreement an appeal would have had to be processed under the “disputes” procedure.
We do not think that this August 31st payment served to defer the commencement of the limitations period in this case. Even if we assume arguendo that limitations did not begin until the parties finally acted under the price rede-termination clause to settle the agreed minimal amount ultimately due to the plaintiff, that date was no later than August 1st, when the supplemental agreement became binding and effective. At that time the contractor was in a position to demand payment, not only of the amount set forth in the supplemental agreement, but also on all of its outstanding claims, including those now in suit. Nothing further remained to be decided or done by the defendant. The plaintiff could demand its money then and there, and bring suit if payment was not made at once. See Nager Electric Co. v. United States, supra. This is not a case, like Eastern School v. United States, decided today, ante, 676, in which the contractor could not tell how much was owed to him until the Government had supplied certain determinations, formulae, *932 or computations. In this case no more than in any other would the mere fact that the Government could conceivably refuse to pay the sum due under the supplemental agreement delay the running of limitations once the plaintiff was in a position to ask for its money. With respect to the beginning of the time-bar period, the critical fact was the signing of the supplemental agreement (which fixed the remaining sum due, according to the Government), not the actual payment of the money. The day the agreement became operative was “the time when all events [had] occurred to fix the Government’s alleged liability, entitling the claimant to demand payment and sue here for his money.” Nager Electric Co. v. United States, supra[2]
In sum, all the significant events occurred more than six years prior to the filing of the petition on August 17, 1966. Plaintiff waited too long to bring its suit. The defendant’s motion to dismiss is therefore granted and the petition is dismissed as barred by the statute of limitations.

 Although plaintiff insists that the facts relating to its settlement regulations should he explored at a trial, we are satisfied, on the basis of the assertions and allegations made, and the material set forth, in plaintiff’s pleadings and brief, that plaintiff has no case eren if its factual assertions are taken at full face value. A trial is therefore unnecessary.

 The opinions in which this court has indicated that payment or presentation of the final payment voucher can be important for limitations purposes (see Austin Eng’r Co. v. Unites States, 88 Ct. Cl. 559 (1939); B-W Constr. Co. v. United States, 100 Ct. Cl. 227, 235 (1943); Sese v. United States, 125 Ct. Cl. 526, 530, 113 F. Supp. 658, 661-62 (1953) McWilliams v. United States, 134 Ct. Cl. 330, 138 F. Supp. 863 (1956); Acorn Decorating Corp. v. United States, 146 Ct. Cl. 394, 398, 174 F. Supp. 949, 951-52 (1959)) have all reflected situations in which, under the provisions of the contract, the fact of payment was equivalent to the Government’s determination of what it considered to be owing for the work. It is noteworthy that in Austin Engineering the court specifically held that limitations began to run from the date the responsible Government official determined what was due, not from, the later date of final payment or execution of the final payment voucher.