Lawana TABBEE, et al., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1147 L.

United States Court of Federal Claims.

Nov. 3, 1993.

Kent A. Higgins, Idaho Falls, ID, for plaintiff.

Andrew M. Eschen, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, DC, for defendant.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's motion to dismiss. Plaintiffs seek declaratory and injunctive relief, as well as monetary damages, from congressional enactment of the Ute Termination Act ("Termination Act" or "Act") and from issuance, by the Secretary of the Interior, of related proclamations regarding plaintiffs' entitlement to various federal benefits. Plaintiffs claim that Congress, in enacting the Termination Act, violated their rights under the Due Process and Equal Protection Clauses of the Fifth

and Fourteenth Amendments to the United States Constitution.[1]

It should be noted that courts have been particularly sensitive to instances of governmental discrimination based upon race, religion, or national origin. One of the fundamental premises of the rule of law is to insure a color-blind society. The very symbol of the law, the blind-folded lady holding the scales of justice, depicts that justice means that all must be treated equally under the law regardless of who they are or how they appear. One of the great apparent anomalies of Indian law is that it is precisely based upon race and genetic inheritance. However, the very concept of treating Indians differently than other American citizens for some purposes recognizes the unique status of Indian Tribes as nations within our Nation. And of course, what has distinguished members of those tribes from other Americans has been their unique tribal inheritance. While it may go against the very grain of equal justice under law to base rights upon who one's parents are or were, it is an inevitable effect of recognizing fundamental rights in tribal groups as well as individuals. While it is clear that a number of actions of that government might take with respect to American Indians might well be impermissible under the due process and equal protection clauses of the Constitution,[2] we can not reach that issue in this case.

After careful consideration of the briefs filed by both parties, and after oral argument, the court must grant defendant's motion, except as it addresses plaintiffs' claim for relief from the imposition of federal taxes. Plaintiffs are given 60 days to file an amended complaint based upon the tax claim and the tax refund jurisdiction of this court.

## FACTS

In 1954, Congress enacted the Ute Indian Supervision Termination Act. 25 U.S.C. § 677 (1976). The Act provided for the division of assets belonging to the Ute Indian Tribe between the "full-bloods" and "mixed-bloods,"[3] and for the eventual termination of "mixed-bloods" from the tribe.[4] In addition, the Act provided for publication by the Secretary of the Interior (Secretary) of final rolls of the full-blood and mixed-blood members of the tribe as of August 27, 1954. 25 U.S.C. § 677g. The Secretary's final rolls were published in the Federal Register in April, 1956, listing 490 mixed-bloods and 1314 full-bloods. 21 Fed.Reg. 2208–2220. In 1961 the Secretary issued a proclamation that the relationship between the government and the "mixed-blood" members of the Ute Indian Tribe was terminated.

Plaintiffs, terminated members of the Ute Indian Tribe and persons who would have been members of the Tribe but for the Ute Termination Act, filed a class action suit against the United States, the Secretary of the Interior, and the Secretary of Health and Human Services in the United States District Court for the District of Utah on September 5, 1990. Plaintiffs challenged the constitutionality of the Ute Termination Act and its implementation by defendants. Plaintiffs sought both a declaration of the Act's invalidity and compensation for, as well as restoration of, benefits they claim to have lost as a result of implementation of the Act.

In February, 1991, the United States District Court for the District of Utah trans-

1. Plaintiffs also allege that enactment of the Termination Act and the resultant denial of benefits constituted "unlawful or premature termination," "breach of trust," "wrongful diversion," "breach of settlement agreement," "breach of duty," "bill of attainder," and "breach of tribal sovereignty."

2. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

3. Section 2 of the Act defines a "full-blood" member of the tribe as one who "possess one-half degree of Ute Indian blood and a total of Indian blood in excess of one-half, excepting those who became mixed-bloods by choice...." It defines a "mixed-blood" member as one who either does not possess sufficient Indian or Ute Indian blood to fall within the full-blood class or one who becomes a "mixed-blood" by choice.... 25 U.S.C. §§ 677a(b) and (c).

4. These provisions were patterned after a Resolution adopted by leaders of the Ute Indian tribe in March, 1954. The Resolution was passed in response to a congressional mandate that the tribe come up with a solution regarding how to distribute the large money judgement it had recently obtained against the government.

**4**

ferred plaintiffs' case to this court. The court's order was based upon its conclusion that plaintiffs' primary claim for relief was for monetary damages against the United States. Order at 6. On June 7, 1991, plaintiffs filed an amended complaint in this court.[5]

Defendant has moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted, lack of subject matter jurisdiction, the running of the applicable statute of limitations, and failure to join an indispensable party.

## DISCUSSION

### STATUTE OF LIMITATIONS

■ The governing statute of limitations in this case is 28 U.S.C. § 2501 (1982), which provides in relevant part: "[e]very claim of which the United States Claims Court[6] has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." This limitation is an express condition to the government's waiver of sovereign immunity and, as such, must be strictly construed. *See Block v. North Dakota ex rel. Board of University and School Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819–20, 75 L.Ed.2d 840 (1983); *Cochran v. United States*, 19 Cl.Ct. 455, 457 (1990).

■ It is generally stated that a claim "first accrues" when all events have transpired that affix liability upon the defendant and entitle the plaintiff to bring suit. *Kinsey v. United States*, 852 F.2d 556, 557 (Fed.Cir.

1988); *Nager Electric Company, Inc. v. United States*, 368 F.2d 847, 177 Ct.Cl. 234, 240 (1966). Plaintiffs are charged with notice of whatever facts an inquiry appropriate to the circumstances would have uncovered. *Mitchell v. United States*, 10 Cl.Ct.· 63, 68 (1986). The fact that plaintiffs may be members of an Indian tribe has no bearing on this rule; they are charged with the same duty of inquiry as are all other plaintiffs. *See United States v. Mottaz*, 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986); *Capoeman v. United States*, 440 F.2d 1002, 1007–08, 194 Ct.Cl. 664 (1971).

The acts which form the basis of plaintiffs' complaint are the following: the enactment of the Ute Termination Act in August, 1954; the identification of plaintiffs as "mixed-bloods" in April, 1956; and the Secretary's issuance of a termination proclamation in August, 1961. Under 28 U.S.C. § 2501, therefore, plaintiffs' complaint would have to have been filed, at the latest, by August, 1967. Instead, plaintiffs filed their complaint on September 5, 1990.

Plaintiffs contend that, regardless of the above, the statute of limitations does not bar the present action. Plaintiffs base this contention on: (1) the "Continuing Claim Doctrine," (2) the existence of certain assets held in trust for them by the government, and (3) the fact that certain events upon which their claim is based did not occur until recent years.[7] The court will address these arguments independently.

---

5. Plaintiffs amended complaint made various technical corrections to their original complaint but did not change the substance of their claims for relief.

6. The Federal Courts Administration Act of 1992, Pub.L. No, 102–572, 106 Stat. 4506 (1992), enacted on October 29, 1992, changed the name of the United States Claims Court to the United States Court of Federal Claims.

7. Plaintiffs originally argued, in September, 1991, that § 677g of the Ute Termination Act also provided support for this contention. Section § 677g granted the terminated Utes 60 days to challenge their termination after publication of the proposed rolls of the mixed-blood and the full-blood group in the Federal Register or in

"newspapers of general circulation in each of the counties of Uintah and Duchesne in the state of Utah." Plaintiffs contended that publication by defendant of the rolls in the Salt Lake Tribune did not satisfy the statute because the Tribune was not a "newspaper of general circulation." Therefore, plaintiffs reasoned, the relevant statute of limitations had not yet run.

On October 18, 1991, however, plaintiffs, by motion, withdrew their opposition to an affidavit, previously filed by defendant, stating that the Salt Lake Tribune was a "newspaper of general circulation." In so doing, plaintiffs acknowledged that the Salt Lake Tribune is a "newspaper of general circulation" and therefore implicitly rejected their initial argument that whatever "statute of limitation" was contained within the Ute Termination Act had not yet run.

### 1. Continuing Claim Doctrine

Plaintiffs contend that the consequences of termination from the Ute Indian Tribe are "continuing wrongs" which, under the continuing claim doctrine, each give rise to a new running of the statute of limitations. Plaintiffs reliance on the continuing claim doctrine finds no legal support in this case.

The continuing claim doctrine stands for the proposition that, where the government owes plaintiffs a continuing duty, a new cause of action arises with every breach of that duty. *See, e.g., Burich v. United States,* 366 F.2d 984, 177 Ct.Cl. 139 (1966). Under this doctrine, a plaintiff would be permitted to sue the government for each benefit wrongfully denied as it came due, regardless of whether the grounds for refusal occurred more than six years prior to plaintiff's filing of the action. *See Friedman v. United States,* 310 F.2d 381, 159 Ct.Cl. 1 (1962).

Recent decisions of the this court and the Federal Circuit, however, indicate a loss of support for the doctrine. In *Sankey v. United States,* 22 Cl.Ct. 743, 746 (1991), *aff'd,* 951 F.2d 1266 (Fed.Cir.1991) (citing *Hart v. United States,* 910 F.2d 815 (Fed.Cir.1990)), the court stated that it no longer recognizes the continuing claim doctrine. In *Hart,* the Court of Appeals for the Federal Circuit refused to apply the doctrine to a widow's claim for annuity benefits under a survivor plan where her husband's death had occurred more than six years prior to the action. Holding that plaintiff's claim first accrued on the day after her husband's death when the annuity first became effective, not when each monthly payment became due, the court ruled that the claim was barred by the statute of limitations. 910 F.2d at 817.

Even if this court were to apply the continuing claim doctrine, plaintiffs' claims here would still be barred. In *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573 (Fed.Cir.1988), the court discussed the same issue as is presented in this case—the potential application of the doctrine to the termination of plaintiffs' tribal status. The court noted that, *if, apart from the illegal termination,* the tribe could demonstrate that it had been denied benefits for which the law mandated compensation, plaintiffs might be able to recover damages that periodically accrued while plaintiffs remained unlawfully terminated. 855 F.2d at 1581. The allegations in plaintiffs' complaint fail to meet this standard.

Plaintiffs' claims are based, not upon benefits denied apart from their termination from the Ute Indian Tribe, but rather, upon benefits lost *as a consequence* of their termination. Plaintiffs acknowledge this in their amended complaint where they allege that Congress, by enacting the Ute Termination Act, "acted against the plaintiffs solely on account of race," and then enumerate the rights and entitlements they have lost "[a]s a proximate result of the defendant's actions." Plaintiffs' Amended Complaint at 5. Thus, even assuming plaintiffs could identify an existing statute which authorized their receipt of benefits and mandated compensation for benefits denied, they would be entitled only to recover for denials within six years of the filing of their complaint. This, however, they can not do.

Application of the continuing claim doctrine is not a means of circumventing the statute of limitations. This court has long acknowledged its obligation to narrowly construe any exceptions to the relevant statute of limitations and apply it "only under compelling circumstances." *Bonen v. United States,* 666 F.2d 536, 229 Ct.Cl. 144, 150 (1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982). To this end, this court has determined that application of the doctrine is to be limited to cases in which the court is required to "resolve sharp and narrow factual issues not demanding judicial evaluation of broad concepts...." *Friedman,* 310 F.2d 381, 159 Ct.Cl. 1, 7 (1962). Clearly, the determination of whether or not Congress has constitutionally terminated a group of Indians from federal protection is not such an issue.

### 2. Trust Status

Plaintiffs, citing *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1578 (Fed.Cir.1988) (citing *Manchester Band of Pomo Indians, Inc. v. United*

*States,* 363 F.Supp. 1238 (N.D.Cal.1983)), claim that where a trust relationship exists between two parties, the statute of limitations does not run against the beneficiary until that trust relationship is repudiated. Plaintiffs contend that the Ute Termination Act expressly retained the trust status of certain oil, gas and minerals, and that, therefore, the statute of limitations had not run in this case.

The rule of *Hopland* is based upon *United States v. Taylor,* 104 U.S. 216, 26 L.Ed. 721 (1881). In *Taylor,* the United States Supreme Court held that the statute of limitations did not run against plaintiff, to whom the government acknowledged owing a specific amount of money, until plaintiff demanded the money and was refused. The government's refusal to pay on demand was held to be a "repudiation" of the trust. *Id.*

Plaintiffs in this case do not allege that defendant has "repudiated" a trust in the manner referred to in *Taylor.* Plaintiffs complaint is not based upon a liquidated claim for which money has been appropriated and yet denied. Rather, plaintiffs suggest that the mere existence of assets held in trust by the government is sufficient to toll the statute of limitations as against any claim plaintiffs may have against the government. Such a broad reading of *Taylor* has been repeatedly rejected by this court and our court of appeals. *See, e.g., Capoeman v. United States,* 440 F.2d 1002, 194 Ct.Cl. 664 (1971) (holding *Taylor* inapplicable where the government had not acknowledged the merits of plaintiffs claim for monetary damages); *Menominee Tribe of Indians v. United States,* 726 F.2d 718 (Fed.Cir.1984) (holding that evidence of a real or purported trust does not toll the statute of limitations when plaintiff had real or constructive notice of the claim).

■ Even if this court were willing to expand *Taylor* to encompass the facts of this case, it could not do so. Although plaintiffs contend that certain oil, gas and mineral rights were still held in trust by the government as of September, 1991,[8] the Court of Claims has already ruled to the contrary. In *Affiliated Ute Citizens of the State of Utah,* 199 Ct.Cl. 1004, 1972 WL 5188 (1972), plaintiffs challenged the government's distribution of certain intangible assets, including the same oil, gas, and mineral rights at issue in this case. The court, in granting the government's motion to dismiss, stated that the rights had already been distributed in the form of shares in the Ute Development Corporation (UDC). 199 Ct.Cl. at 1005. Citing *Affiliated Ute Citizens of Utah,*[9] 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Court of Claims held that

[t]he Supreme Court has determined that (a) UDC was lawfully created, (b) UDC is the "authorized representative of the mixed-bloods under the Partition Act and (c) the termination proclamation ended all federal supervision and trust relationships with respect to the UDC shares 406 U.S. at 136–37, 143–44, 149–50 [92 S.Ct. at 1463–64, 1467, 1470]. It follows, in this court's view, that the part of plaintiffs' claims (involving "intangible" rights covered by the UDC stock) must have accrued by August, 1961. Whether the claim is that the UDC shares should have been distributed differently as between various kinds of mixed-bloods, or whether it is that the form of joint management by full-bloods and mixed-bloods should have been altered so as to give greater rights to the mixed-bloods, all the facts and circumstances were known and in existence at the time of the termination proclamation. By that date, the mixed-bloods knew their relative share and, just as in the case of the tangible property, could have sued individ-

---

8. Plaintiffs rely upon *Ute Distribution Corporation v. United States,* 938 F.2d 1157 (10th Cir. 1991) in support of this contention. This opinion, issued by the United States Court of Appeals for the Tenth Circuit, is not binding on this court, while decisions of both the Court of Claims and the Federal Circuit are.

9. Plaintiffs cite this case in support of their assertion that the oil, gas and minerals remained in trust following enactment of the Ute Termination Act. The Supreme Court does cite language from the Act purporting to exclude these assets from the transfer from the trust to the Ute Indians. However, the Court also both acknowledges and upholds the creation of the UDC to manage and control these assets.

ually or through the Affiliated Ute Citizens or UDC. In this connection, it makes no difference that the underlying assets may have remained in trust status.

*Id.* at 1005–1006.

In 1977 the Court of Claims, reiterated its position when it stated, with respect to the claims regarding the mixed-bloods fishing, water and hunting rights, that:

> The division and distribution of assets of which plaintiffs complain were effected by 1961, all intangible assets being conveyed either in the form of shares in the Ute Distribution Corporation or as appurtenant to land; whatever claims plaintiffs may have had matured then and became barred by the statute of limitations in 1967. . . .

*Affiliated Ute Citizens of the State of Utah, etc. v. United States* (orders), 566 F.2d 1191, 215 Ct.Cl. 935, 936 (1977).

The United States Court of Federal Claims is bound by these decisions. It cannot, therefore, accept plaintiffs' argument regarding assets held in "trust" and any tolling effect this may have.

### 3. Occurrence of Recent Events

■ Plaintiffs contend that, because certain events upon which they base their complaint did not occur until recently, the statute of limitations has not run against them. Except as it applies to the taxation of oil, mineral and gas dividends, this claim is merely a repackaging of the continuing claim doctrine. The effective date of the Secretary's Termination Proclamation was August 27, 1961. Under 28 U.S.C. § 2501 (1970), any request for relief from governmental actions taken pursuant to that Proclamation must have been initiated no later than August, 27, 1967.

■ With respect to the plaintiffs' allegations concerning improper taxation, it would appear that the statute of limitations has run out for the reasons stated above. There may however, be a distinction between the allotment of benefits, which are granted, at least initially, at the discretion of the government, and the imposition of taxes, which operate involuntarily and must be imposed in a constitutional manner.

This court has historically had jurisdiction over claims for tax refunds. *See Lowe Brothers v. United States,* 304 U.S. 302, 58 S.Ct. 896, 82 L.Ed. 1362 (1938). The jurisdictional requirement for maintaining such a suit in the United States Court of Federal Claims requires that, prior to filing a complaint with this court, the taxpayer fully pay any amount assessed by the Internal Revenue Service [10] and file a timely claim for a refund with that agency. 26 U.S.C. § 7422(a) (1988). Either that claim must be denied, or the taxpayer must wait six months from the date of filing with the IRS before he or she may file with the Court of Federal Claims. Since the basis of plaintiffs' tax claim is unclear, the court will grant plaintiffs 60 days to file an amended complaint indicating how their tax claim differs from their other claims and whether the jurisdictional prerequisites have been met.

If no independent legal basis exists for the tax claims (other than that concerning the Termination Act), or if the jurisdictional prerequisites for the court's tax jurisdiction have not been met, the court will issue an order dismissing the tax claim. As the statute of limitations is dispositive in this case, the court will not address the other bases of defendant's motion to dismiss.

### CONCLUSION

For the reasons set forth above, the court grant's defendant's Motion to Dismiss as to all issues other than the tax claim. The court allows plaintiffs 60 days to refile an amended complaint, if they choose, setting out the basis for their tax claim, other than that stemming from their tribal termination, and the fact that they have met the jurisdictional prerequisites. If plaintiff does file an amended complaint within 60 days, the court will review it to determine whether the court's jurisdictional prerequisites have been met. If plaintiff does not file such a complaint, the case shall be dismissed in its

---

**10.** *Flora v. United States,* 357 U.S. 63, 75, 78 S.Ct. 1079, 1086, 2 L.Ed.2d 1165 (1958), *op. on* *reh'g,* 362 U.S. 145, 177–88, 80 S.Ct. 630, 647–53, 4 L.Ed.2d 623 (1960).

entirety and the Clerk of the Court shall enter a judgment dismissing the complaint.

**IT IS SO ORDERED.**