Ronald WRONA, Ph.D., Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 96–455C.

United States Court of Federal Claims.

April 22, 1998.

Ronald Wrona, Ph.D., pro se.

Lara Levinson, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David Cohen, Director, Anthony Anikeeff, Assistant Director, and Lorie Mayorga, Health Care Financing Division, United States Department of Health and Human Services, attorneys of record for defendant.

## OPINION

HORN, Judge.

### FACTS

This case comes before the court on the defendant's February 28, 1997 motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). In 1972, social security amendments were passed that extended Medicare coverage for dialysis and transplantation to individuals with End Stage Renal Disease (ESRD). Pub.L. 92–603, § 2991, 86 Stat. 1329, 1463–64 (1972). In 1978, amendments to the act were passed which authorized the establishment of ESRD network areas and network organizations under the Medicare program. Network 24 was established in 1978 as an original ESRD network organized under 42 U.S.C. § 1395rr(b)(7) and (c). Dr. Ronald Wrona was the Executive Director of Network 24 throughout its ten years of operation.

When the Consolidated Omnibus Budget Reconciliation Act of 1985 was passed, it instructed the Secretary of the United States Department of Health and Human Services (HHS) to consolidate the existing ESRD networks by creating larger geographic service areas, but to leave a minimum of fourteen (14) networks. Pub.L. 99–272, § 9214, 100 Stat. 82, 180 (1986). This Act was modified by the Omnibus Budget Reconciliation Act, which amended the minimum number of ESRD networks to seventeen (17) and authorized transition payments to be made in July

1988 for the original organizations whose operations were to be terminated. Pub.L. 99–509, § 9335(d)-(g), 100 Stat. 1874, 2029–33 (1986). Network 24 was one of the original network organizations which was terminated. Grants to the terminated networks were ended in June 1988. July 1988 was designated as a transition month for the terminated networks.

Dr. Wrona alleges that Network 24 submitted plans to the government for phase-out in December 1987, which included a request for funding during the transition month and for mass severance payments. Dr. Wrona alleges that no response was received to this request. In July 1988, the plaintiff alleges that Network 24 submitted a revised plan for the funding of a transition month and for grant close-out costs. According to the complaint, in August 1988, HHS notified the plaintiff that close-out payments were limited to $16,334.00 and, on October 12, 1988, specifically denied the request for additional payments. Thereafter, on February 28, 1989, HHS sent a letter to Dr. Wrona, signed by Richard H. Husk, Director, Office of Peer Review, Health Standards and Quality Bureau, which indicated that arrangements were being made to send $16,236.79 in close-out costs. A final close-out payment in the amount of $16,236.79 was made to Network 24 in late February or early March 1989. The plaintiff alleges that several letters were sent to HHS seeking additional close-out costs and that a list of allegedly accrued, but unpaid, expenses was also submitted for the period between August 1, 1988 and December 31, 1988. The plaintiff alleges that no response was received to these requests.

An appeal with the HHS Appeals Board (the Board), Docket No. A–94–208, was filed on September 23, 1994. On March 8, 1995, the Board dismissed the appeal for lack of jurisdiction. The Board found that "[w]hat the Network is now seeking through its appeal may be reasonably construed as an increase in the amount of its supplemental grant award to cover severance pay." The Board also wrote that "[t]he record here supports HCFA's [Health Care Financing Administration] argument that this is a matter specifically excluded from Board jurisdiction." The Board found that Network 24's appeal was "clearly untimely" as it was filed more than 30 days after the final determination was made in Husk's February 28, 1989 letter.

On July 29, 1996, the instant case was filed by Dr. Wrona *pro se* and in his individual capacity. Dr. Wrona seeks to recover mass severance pay and administrative costs associated with the termination of Network 24, as well as interest and litigation costs, in the amount of $26,795.55 from the defendant.

## DISCUSSION

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994).

Before the merits of Dr. Wrona's claim can be addressed, the court must determine whether it has jurisdiction to do so. For a number of reasons, the court finds that it does not.

It appears that the plaintiff relies on the Tucker Act, 28 U.S.C. § 1491 (1994), as amended, 28 U.S.C.A. § 1491 (Supp.1998), to provide the jurisdictional authority for this court to hear the plaintiff's claim. Under the Tucker Act, only parties in privity of contract with the government have standing to bring a breach of contract action in the United States Court of Federal Claims. *See Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984). Furthermore, RCFC 17(a) mandates that every action shall be prosecuted in the name of the real party in interest. It is well-established that "unless the plaintiff can provide evidence of the existence of some type of contract between it

and the United States, it cannot, as a subcontractor, recover directly from the United States for amounts owed to it by the prime." *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 8, 479 F.2d 1334, 1337 (1973) (citations omitted). The real party in interest in a contract dispute is the party which has a contractual relationship with the government. *See Hemphill Contracting Co. v. United States,* 34 Fed.Cl. 82, 85 (1995).

In *Bolin v. United States,* 221 Ct.Cl. 947, 948 (1979), the court held that employees or subcontractors of a government contractor have no contractual relationship with the United States and, therefore, cannot maintain a suit against it. This principle also was followed in *Robo Wash, Inc. v. United States,* 223 Ct.Cl. 693, 695, 1980 WL 13154 (1980), in which the court held that employees who perform services for those who have contracted with the government lack privity of contract with the government and, thus, cannot sue the United States for compensation or other relief. As a result, in *Robo Wash, Inc.,* the plaintiffs, employee-stockholders, were not the real parties in interest and, therefore, lacked standing to maintain the suit. *Id.* at 695–96. The court noted that the agreement was not entered into for the benefit of the employees, including the officers of the corporation, but for the benefit of the corporation and, therefore, the employees had no right to file suit. *Id.* at 698.

■ Similarly, in the case at bar, the grant agreement was between HHS and Network 24, and not between HHS and Dr. Wrona in his individual capacity. Government funds were allocated for the benefit of Network 24 and were not specifically allocated to Dr. Wrona, or for the benefit of Dr. Wrona. Additionally, the government did not specifically terminate its relationship with Dr. Wrona, but with Network 24. Network 24 is the real party in interest to the above-captioned suit as it was the entity in privity of contract with the United States. Therefore, Network 24 is the only party with standing to litigate this particular claim.

RCFC 17(a) states that:
No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

This rule is particularly relevant when dealing with a *pro se* plaintiff, such as Dr. Wrona, who is unfamiliar with court procedures. If this were the only procedural problem with the above-captioned complaint, it might be appropriate to permit the plaintiff to amend his complaint to comply with RCFC 17. In the instant case, however, even if the complaint were amended to name Network 24 as the plaintiff, the action still could not be maintained in this court at this time because the claims raised are barred by the statute of limitations.

■ The statute of limitations for filing a complaint in the United States Court of Federal Claims under the Tucker Act is codified in 28 U.S.C. § 2501 (1994) and states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Compliance with the statute of limitations is jurisdictional. *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir.1986), *cert. denied,* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987) (citing *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986)). The court may not make an exception to allow a claim to be asserted beyond the six-year statute of limitations set forth in 28 U.S.C. § 2501. *Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990) (citing *Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957)). "Only Congress can lengthen the time period for bringing suit against the United States.... The statute of limitations is an express limitation on the Tucker Act's waiver of sovereign immunity." *Id.* (citing *Soriano v. United States,* 352 U.S. at 273–74, 77 S.Ct. at 271–72).

■ "A claim first accrues when all the events have occurred which fix the alleged liability of the United States and entitle the

claimant to institute an action." *M.R.K. Corp. v. United States*, 15 Cl.Ct. 538, 544 (1988)(quoting *Japanese War Notes Claimants Ass'n v. United States*, 178 Ct.Cl. 630, 632, 373 F.2d 356, 358, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967)). *See also Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1571 (Fed.Cir.), *cert. denied*, 509 U.S. 904, 113 S.Ct. 2995, 125 L.Ed.2d 689 (1993); *Hart v. United States*, 910 F.2d at 817; *Kinsey v. United States*, 852 F.2d 556, 557 (Fed.Cir. 1988); *Tabbee v. United States*, 30 Fed.Cl. 1, 4 (1993). "The clock starts as soon as the plaintiff is put on notice that inquiry into a possible claim is called for." *L.E. Cooke Corp. v. United States*, 27 Fed.Cl. 753, 754 (1993) (footnote omitted).

■ Dr. Wrona seeks relief for a claim that he alleges arose from an agreement with HHS to fund Network 24 with grant monies for its ESRD program. Dr. Wrona submitted requests for close-out costs in December 1987 and in July 1988. He stated in his complaint that, in August 1988, he was notified that transition payments would be limited to $16,334.00. The request for additional close-out costs beyond this amount was resubmitted and again denied on October 12, 1988. Final payment of $16,236.79 was sent and received in late February or March 1989.

Dr. Wrona alleges in his complaint that several letters were written to HHS that requested post-termination expenses, the most recent sent in April 1996. Dr. Wrona also argues that, because the grant was not properly terminated, "there is, as yet, no date on which to begin the countdown regarding the statute of limitations." The plaintiff also states that an appeal was filed with the HHS Appeals Board on September 23, 1994, Docket No. A–94–208, when he learned of the existence of the Appeals Board.

Dr. Wrona's argument that the statute of limitations is not applicable in this case fails. In *Brighton Village Associates v. United States*, 52 F.3d 1056 (Fed.Cir.1995), beginning in 1989, the plaintiffs presented claims to officials at the United States Department of Housing and Urban Development (HUD) for retroactive adjustments in the plaintiffs' rents. The plaintiffs then filed suit in the United States Court of Federal Claims on June 28, 1991. The suit was dismissed by the court as plaintiffs' claims for the period 1981 to 1984 were found to be time-barred. *Id.* (citing *Brighton Village Associates v. United States*, 31 Fed.Cl. 324, 330–33 (1994)). The Court of Appeals for the Federal Circuit held that, given the facts presented, "Brighton's repeated administrative challenges to HUD's policies did not postpone accrual of its claims." *Id.* at 1060. The circuit court wrote:

A claim that "arises under" a contract receives different treatment under the statute of limitations than does a claim that alleges a "pure breach." A "pure breach" claim accrues when a plaintiff has done all he must do to establish his entitlement to payment and the defendant does not pay. *Lins v. United States*, 688 F.2d 784, 787, 231 Ct.Cl. 579 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983). A claim "arising under" a mandatory dispute resolution provision of a contract, however, does not accrue "until the duly-invoked decision of the administrative or arbitral board or tribunal." *Nager Elec. Co. v. United States*, 368 F.2d 847, 854, 177 Ct.Cl. 234 (1966); *accord Crown Coat Front Co. v. United States*, 386 U.S. 503, 520–22, 87 S.Ct. 1177, 1187, 18 L.Ed.2d 256 (1967).

Brighton's claims seek damages for breach of the HAP contract, they do not arise under it. Indeed, Brighton characterized its claims against HUD in its complaint as "breach of contract." Further, for a claim to arise under a contract, it must rely upon a clause that authorizes a specific remedy.

\* \* \* \* \* \*

Moreover, this court detects no grounds to toll the statute of limitations. Brighton sought permissive administrative remedies, which do not toll the limitations period. *Hurick v. Lehman*, 782 F.2d 984, 987 (Fed. Cir.1986). Further, Brighton's pursuit of administrative remedies did not interfere with its ability to satisfy the statute of limitations. Brighton could have commenced a protective action in the Claims Court when it deduced that HUD would

not act speedily on its protests, and then moved for a suspension or stay of proceedings until HUD acted.

In addition, Brighton did not toll the limitations period by negotiating with HUD from March 1989 to April 1991. "The mere continuance of negotiations, even where United States representatives express a view that a settlement is likely, constitutes no reason to extend the limitations period." *Cuban Truck & Equip. Co. v. United States,* 333 F.2d 873, 879 n. 15, 166 Ct.Cl. 381 (1964), *cert. denied,* 382 U.S. 844, 86 S.Ct. 65, 15 L.Ed.2d 85 (1965); *accord Henry Prods. Co. v. United States,* 180 Ct.Cl. 928, 930, 1967 WL 8882 (1967).

Finally, Brighton was not diligent in its pursuit of administrative remedies. Brighton did not contact HUD until 1989, even though it alleged that adjustments were due as early as 1981.

*Id.* at 1060–61 (citations omitted).

In the above-captioned case, the plaintiff's claim does not arise under a contract, but, rather, is one of "pure breach." As such, the plaintiff's claim accrued and the statute of limitations began to run in late February or March 1989 at the time of the final payment of $16,236.79 from HHS.[1] Dr. Wrona's pursuit of administrative remedies through his correspondence with HHS did not toll the statute of limitations. Even if it could be argued that Network 24's claim was one arising under its grant agreement and, thus, was governed by the procedures detailed in 45 C.F.R. § 16.3, this regulation requires that appeals of final decisions, such as the final payment notice given on February 28, 1989, be filed within thirty days. Moreover, the appeal which was filed with the HHS Appeals Board and which was dismissed as untimely also did not toll the limitations period.

In *Appalachian Regional Healthcare, Inc. v. United States,* 999 F.2d 1573 (1993), a medicare provider sought cost reimbursements for services provided to medicare beneficiaries. The Court of Appeals for the Federal Circuit found that because the provider failed to follow administrative appeal regulations and file an appeal with the Provider Reimbursement Review Board within 180 days of a final cost determination, it was foreclosed from appealing in another forum. *Id.* at 1577–78. In the instant action, Dr. Wrona did not file an appeal with the HHS Appeals Board until September 1994 and thus, his claim was found to be time-barred. Network 24 failed to pursue administrative remedies within HHS or with this court in a diligent manner. The claim filed in this court is time-barred and, thus, is beyond the jurisdiction of this court.

### CONCLUSION

The proper time for Network 24 to have sought relief for this claim was when it received the final check from HHS for the close-out costs in late February or March 1989. Dr. Wrona's claim was filed in this court in July 1996, over seven years after Network 24 was paid, and after the applicable six-year statute of limitations had expired. *See* 28 U.S.C. § 2501. Therefore, the court, **GRANTS** the defendant's motion to dismiss.

**IT IS SO ORDERED.**

1. The HHS Appeals Board decision, issued March 8, 1995, suggests that the final determination date on the question of severance pay may have been the February 28, 1989 letter to Dr. Wrona from HHS, signed by Richard H. Husk, which stated that only $16,236.79 would be allowed. Whether the court begins running the statute of limitations from the February 28, 1989 letter or from when the check for close-out costs was sent or received, plaintiff's claim is time-barred.

Dr. Wrona also asserts that there is a difference between transition payments and close-out costs on the grants and, as a result, the $16,236.79 payment should not invoke accrual of the statute of limitations. However, Richard H. Husk's letter of February 28, 1989 specifically states that the payment made by HHS for $16,236.79 was for close-out costs. Furthermore, Dr. Wrona asserts that designating these funds as close-out costs was inappropriate and improper under the guidelines issued in OMB Circulars A–110 and A–122. Although a reading of the OMB Circulars suggests that Dr. Wrona is misapplying the guidance contained therein, the principal difficulty is that these contentions should have been raised at the time when Mr. Husk's letter of February 28, 1989 was received or when the payment was sent.