**APPALACHIAN REGIONAL HEALTHCARE, INC.,**
Plaintiff–Appellee,

v.

**The UNITED STATES, Defendant– Appellant.**

No. 92–5156.

United States Court of Appeals, Federal Circuit.

July 27, 1993.

**1574**

Joe W. Fleming, II, Washington, DC, argued for plaintiff-appellee.

Terrence S. Hartman, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Of counsel were Henry Goldberg and Charles Bailey, Office of Gen. Counsel, Dept. of Health and Human Services.

Thomas Lewis Nelson, Boult, Cummings, Conners & Berry, Nashville, TN, Edgar C. Morrison, Jr., Cauthorn Hale Tobin & Hornberger, San Antonio, TX, and John R. Hellow, Hooper, Lundy & Bookman, Los Angeles, CA, were on the brief, for the amicus curiae, Texas Hosp. Ass'n.

Before PLAGER, Circuit Judge, COWEN, Senior Circuit Judge, and LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

The United States appeals from the August 9, 1991 decision by the United States Claims Court,[1] *Appalachian Regional Healthcare, Inc. v. United States*, No. 205–88C (Cl.Ct. Aug. 9, 1991), denying the United States' motion to dismiss Appalachian Regional Healthcare, Inc.'s (ARH's) complaint for lack of jurisdiction. The Claims Court found this case indistinguishable from *Mount Sinai Medical Center of Greater Miami, Inc. v. United States*, 23 Cl.Ct. 691 (1991), which decided the court had jurisdiction under the same circumstances as in this case. Because we conclude that the Claims Court did not have jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1982), we reverse.

## BACKGROUND

### The Medicare Program

Under the Medicare Program[2] of the Social Security Act, 42 U.S.C. §§ 301–1397f (1982), providers of medical services may receive reimbursement for the "reasonable cost" of certain medical services provided to Medicare beneficiaries. 42 U.S.C. § 1395f(b) (1982). Initially, the Secretary of the Department of Health and Human Services makes payments to a provider during the course of a year based on an estimate of the amount which will ultimately be paid to that provider for medical services rendered to Medicare beneficiaries. 42 U.S.C. § 1395g (1982). At the end of the fiscal year, the provider is required to submit to a fiscal intermediary a cost report detailing actual costs with its request for reimbursement.[3] 42 U.S.C. § 1395f(a) (1982); 42 C.F.R. §§ 413.20(a) & (b), 413.24(f). The intermediary audits the cost report for compliance

---

1. Pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992), the United States Claims Court was renamed the United States Court of Federal Claims, effective October 29, 1992.

2. The Medicare Program was created to help provide health care for the aged and other qualified individuals. Health Insurance for the Aged Act, Pub.L. No. 89–97, § 102, 79 Stat. 291 (codified as amended in scattered sections of U.S.C. Titles 26 & 42).

3. A provider may submit its cost report directly to the Secretary, but typically a fiscal intermediary is used, as was the case here.

with applicable federal regulations and issues a Notice of Program Reimbursement (NPR) reflecting the amount to which the provider is entitled. *See* 42 C.F.R. § 405.1803. After issuance of the NPR, the Secretary compares the specified reimbursement award to the prior payments and pays any deficiency. *See* 42 C.F.R. §§ 405.1803(c), 413.60.

In 1972, Congress amended the Social Security Act to establish the Provider Reimbursement Review Board with jurisdiction to review reimbursement disputes where the amount in controversy exceeds $10,000. Social Security Amendments of 1972, Pub.L. No. 92–603, § 243(a), 86 Stat. 1420 (codified as amended at 42 U.S.C. § 1395*oo* ). Congress limited judicial review of Medicare reimbursement determinations to situations in which the Secretary reverses the Board. *Id.* In such instances, a provider may obtain judicial review "by the United States District Court for the district in which it is located or in the United States District Court for the District of Columbia, as an aggrieved party under the Administrative Procedure Act, notwithstanding any other provision in section 205 of the Social Security Act." Social Security Amendments of 1972 § 243.

Two years later, Congress reconsidered the issue of judicial review for Medicare reimbursement claims and amended the Social Security Act to provide that

> [p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or ... Secretary is received. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7

of title 5, United States Code, notwithstanding any other provisions in section 205 [of the Social Security Act].

Tariffs–Horses, Pub.L. No. 93–484, § 3(a), 88 Stat. 1459 (1974) (codified as amended at 42 U.S.C. § 1395*oo* (f)) (emphasis added). These amendments applied to cost reports of service providers for accounting periods ending June 30, 1973 or later. Tariffs–Horses § 3(b); Social Security Amendments of 1972 § 243(c).

██ Thus, under the Medicare Program, if a provider disagrees with an NPR, it may appeal to the Board. 42 U.S.C. § 1395*oo*. Certain conditions must exist for a hearing by the Board: (1) the provider must be dissatisfied with the final determination of the Secretary or intermediary, or have not received a timely final determination from the intermediary; (2) the amount in controversy must be $10,000 or more; and (3) the provider's request for a hearing must be filed within 180 days after notice of the intermediary's final determination. 42 U.S.C. § 1395*oo* (a). The Board may affirm, reverse, or modify the intermediary's decision. 42 U.S.C. § 1395*oo* (d). The Secretary may review the decision further and either affirm, reverse, or modify the Board's decision. 42 U.S.C. § 1395*oo* (f)(1). If the provider is still dissatisfied, it may challenge the decision in district court. *Id.*

### ARH's Claims

ARH owned or operated ten hospitals certified as providers of medical services under the Medicare Program. As required for reimbursement, ARH filed cost reports in compliance with the 1979 Malpractice Rule[4] for the five fiscal years ending June 30, 1980 through June 30, 1984. Subsequently, various courts of appeals, including those for the Fourth and Sixth Circuits, where all of ARH's hospitals were located, held the 1979 Rule invalid. *E.g., Cumberland Medical Ctr.*

---

4. On July 1, 1979, the Secretary of the Department of Health and Human Services issued the 1979 Malpractice Rule, 44 Fed.Reg. 31,641 (codified at 42 C.F.R. § 405.452 (1979)), which changed the way in which malpractice insurance costs were reimbursed. This regulation required that future malpractice insurance costs be allocated to the Medicare Program based on the

ratio of the provider's Medicare paid malpractice losses to its total paid malpractice losses for the current cost reporting period and the preceding four-year period. For cost reporting periods ending prior to June 30, 1979, a provider's cost of maintaining malpractice insurance was apportioned on the basis of its Medicare utilization rate.

*v. Secretary of Health & Human Servs.*, 781 F.2d 536 (6th Cir.1986); *Bedford County Memorial Hosp. v. Health & Human Servs.*, 769 F.2d 1017 (4th Cir.1985); *Lloyd Noland Hosp. & Clinic v. Heckler*, 762 F.2d 1561 (11th Cir.1985).

ARH timely filed an appeal with the Board concerning the treatment of its malpractice insurance costs for the fiscal year ending June 30, 1984.[5] On April 12, 1985, the Board determined that it lacked jurisdiction to review ARH's claim because ARH had complied with the 1979 Malpractice Rule in preparing its cost reports and therefore presumably had no basis for complaint. ARH then filed a civil action in the United States District Court for the Eastern District of Kentucky contesting the validity of the 1979 Rule. On May 1, 1986, however, the Secretary replaced the 1979 Rule with another regulation, applicable to cost reporting periods beginning on or after June 30, 1979.[6] As a result of the promulgation of the new regulation, the parties to the district court suit dismissed the Kentucky action without prejudice.

Under 42 C.F.R. § 405.1885, parties, at the discretion of a fiscal intermediary, were entitled to request that cost reports be reopened and reevaluated for a period of three years after issuance of an NPR. Accordingly, on July 29, 1987, ARH then requested that its fiscal intermediary, Blue Cross and Blue Shield of Kentucky, Inc., reopen the cost reports for its provider hospitals and that ARH be reimbursed for its costs of malpractice insurance as prescribed by the 1986 Rule.[7] Blue Cross refused to do so.

On March 30, 1988, ARH filed this action in the United States Claims Court, claiming that the 1979 Malpractice Rule was invalid and that ARH was entitled to judgment for reimbursement of malpractice insurance costs for the five years ending June 30, 1980 through June 30, 1984, calculated under the rule in effect prior to 1979, less any amounts paid by the Medicare program under other rules.

The government moved to dismiss the suit for lack of subject matter jurisdiction, arguing that Congress had provided a specific judicial review procedure for Medicare reimbursement claims under 42 U.S.C. § 1395oo, with which ARH had failed to comply, and that ARH's failure to utilize the prescribed procedure did not thereby provide jurisdiction in the Claims Court to hear such claims under the Tucker Act, 28 U.S.C. § 1491. The court denied the motion to dismiss, basing its decision on *Mount Sinai*. According to the court, the amendments to the Social Security Act in 1972 and 1974 did not repeal, expressly or by implication, existing Tucker Act jurisdiction over Medicare reimbursement disputes in cases in which there is no other avenue for judicial review. 23 Cl.Ct. at 697. The court stated that jurisdiction under the Tucker Act was proper in this case because ARH had no other avenue for judicial review of what was a legitimate claim against the United States. *Id.* Finding no factual distinction between this case and *Mount Sinai*, the court denied the motion and the United States appealed.[8]

## DISCUSSION

 For purposes of a motion to dismiss, factual allegations by the nonmovant

5. ARH argues for the first time on appeal that it also appealed to the Board concerning its cost report for the fiscal year ending June 30, 1983. However, it made no such assertion in its complaint and presented no evidence. Thus, we will not consider this issue. *See SMS Data Prods. Group, Inc. v. United States*, 900 F.2d 1553, 1558 (Fed.Cir.1990).

6. Under the 1986 Rule, intermediaries automatically recalculated reimbursement amounts for all open cost reports, including pending appeals to the Board for reimbursement claims. 51 Fed. Reg. 11,142 (codified at 42 C.F.R. § 405.452 (1986)). A provider could also request the reopening of any cost reports within three years

from the date of the NPR, *id.*, which is what ARH attempted to do for the fiscal year ending June 30, 1984.

7. The reason for Blue Cross's refusal to reopen the cost reports is not clear from the record. However, such a determination was discretionary with Blue Cross. *See* 42 C.F.R. § 405.-1885(a) ("determination of an intermediary ... may be reopened ... on the motion of the provider affected by such determination ...").

8. The parties stipulated to the entry of judgment to ARH in the amount of $246,084, with the United States expressly reserving its right to appeal the court's denial of the motion to dismiss.

are accepted as true. *See Merrick v. United States,* 846 F.2d 725, 726 (Fed.Cir.1988); *Featheringill v. United States,* 217 Ct.Cl. 24, 26, 1978 WL 5755 (1978). We review *de novo* the correctness of the Claims Court's legal determination not to dismiss for lack of subject matter jurisdiction. *Aamodt v. United States,* 976 F.2d 691, 691 (Fed.Cir.1992).

The government argues that Congress created a comprehensive scheme of administrative and judicial review for Medicare provider reimbursement claims and that this scheme impliedly preempted whatever jurisdiction the Claims Court possessed with respect to such claims under the Tucker Act. Therefore, according to the government, the Claims Court erred as a matter of law in denying the government's motion to dismiss for lack of subject matter jurisdiction.

ARH responds that the amendments to the Social Security Act did not repeal, expressly or by implication, Tucker Act jurisdiction over Medicare reimbursement disputes where there is no other avenue for judicial review. ARH cites *Matias v. United States,* 923 F.2d 821 (Fed.Cir.1990), to support its contention. In that case we held that an implied repeal of Claims Court jurisdiction could only be found if other enactments constituted a comprehensive statutory scheme effecting a revocation of collateral review. According to ARH, the amendments and the legislative history contain no reference to the Tucker Act or any Congressional intent to eliminate Claims Court jurisdiction.

■ The Claims Court is a court of limited jurisdiction and, absent congressional consent to entertain a claim against the United States, the court lacks jurisdiction over that claim. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *Id.* at 398, 96 S.Ct. at 953. In order to state a claim under the Tucker Act, sovereign immunity must be waived, and an action may be maintained only if it is "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see also United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) (claimant must establish some substantive provision of law, regulation, or the Constitution, which can be construed as mandating compensation, to state a claim within the jurisdiction of the trial division of the Court of Claims).

■ Prior to the 1972 and 1974 amendments to the Social Security Act, Tucker Act jurisdiction existed for Medicare reimbursement claims because the Social Security Act provided a substantive right to money damages without providing a specific statutory review scheme. *See Whitecliff, Inc. v. United States,* 536 F.2d 347, 350–51, 210 Ct.Cl. 53 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). Tucker Act jurisdiction still remains over claims for which judicial review is not available elsewhere, such as pre–1973 claims and claims for less than $10,000. However, in *Whitecliff,* the Court of Claims stated that, when the Medicare statute specifically provides for review, providers and courts must follow the specified procedures. *Id.*

The court reaffirmed this holding in *Appalachian Regional Hospitals, Inc. v. United States,* 576 F.2d 858, 862, 217 Ct.Cl. 1 (1978), stating that the Tucker Act "confer[red] jurisdiction upon this court to resolve claims for Medicare reimbursement, in the absence of specific legislation providing that judicial review be available exclusively elsewhere." *See also John Muir Memorial Hosp., Inc. v. United States,* 221 Ct.Cl. 843, 1979 WL 10395 (1979).

■ According to ARH, because appeals to the Board had to have been filed within 180 days of a final cost determination, ARH was foreclosed from seeking administrative review under the Social Security Act. ARH cites *Bethesda Hospital Association v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988), for the proposition that a provider is not to be faulted for following the Secretary's current lawful regulation, and argues that its claim arose only upon judicial deter-

mination that the 1979 Malpractice Rule was invalid. Thus, ARH contends that its only avenue for judicial review was through the Claims Court. We do not agree.

In *Bethesda Hospital Association*, the Supreme Court stated that 42 U.S.C. § 1395oo (f)(1)

> grants providers the right to obtain judicial review of an action of the fiscal intermediary, but *the predicate is that the Board must first make a determination that it is without authority to decide the matter* because the provider's claims involves a question of law or regulations. It is this determination of the Board, or alternatively the Board's failure to act, that triggers the right of judicial review.

485 U.S. at 406–07, 108 S.Ct. at 1260 (emphasis added; footnote omitted). ARH did not go to the Board for the cost years ending June 30, 1980 through June 30, 1983. ARH could have challenged the Secretary's 1979 Rule under the scheme set forth in 42 U.S.C. § 1395oo for those years by filing its cost reports pursuant to the 1979 Rule and then appealing the validity of that rule, as it did for the cost year ending June 30, 1984. Alternatively, ARH could have asserted entitlement to costs based on the pre–1979 Rule, and then sought review of any disallowance pursuant to 42 U.S.C. § 1395oo. For the cost years in issue, ARH made a conscious choice to accept the level of reimbursement afforded by the 1979 Rule. It did not timely file an appeal under section 1395oo and it is now foreclosed from doing so° in another forum.[9] Although ARH's claim for the cost year ending June 30, 1984 was properly raised with the Board and then in district court pursuant to section 1395oo, it was voluntarily dismissed by the parties.

▇ ARH contends that because both the fiscal intermediaries and the Board lack authority to consider the validity of Medicare regulations, any dispute regarding the validity of the regulations is expressly outside the scope of the Board's review. That is not entirely correct. While the Board lacks that authority, appeal to the Board was a prereq-

uisite to judicial review. *See Bethesda Hosp. Ass'n*, 485 U.S. at 406–07, 108 S.Ct. at 1259–60. Other providers challenged the 1979 Rule's validity in district court and ARH could also have done so.

A provider cannot ignore the procedures prescribed by Congress, and only after other providers have successfully prevailed in litigating their claims, file suit in the Claims Court under the Tucker Act after a statutory deadline has passed. In this case, no other remedy is available only because statutorily prescribed remedies have gone unused. ARH's failure to raise its claim in accordance with statutory provisions for review does not create new Tucker Act jurisdiction over that claim.

ARH argues that Congress did not intend to create a situation in which Medicare providers are encouraged to litigate every potential challenge to rules and regulations promulgated by the Secretary out of fear that a rule may later be invalidated and a provider be without recourse for judicial review. However, Congress did not create such a situation. ARH's claim could have been asserted by following the statutory review procedure.

## CONCLUSION

The trial court erred as a matter of law in denying the government's motion to dismiss ARH's claim for lack of subject matter jurisdiction. Accordingly, the judgment is reversed.

## COSTS

No costs.

*REVERSED.*

---

9. While ARH did file a discretionary request under 42 C.F.R. § 405.1885 to reopen its cost reports, this was not appealable. *See John Muir*

*Memorial Hosp., Inc. v. United States,* 221 Ct.Cl. 843, 1979 WL 10395 (1979).