**PINES RESIDENTIAL TREATMENT CENTER, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–794 C.

United States Court of Federal Claims.

Feb. 24, 2005.

James E. Moore, Richmond, VA, for plaintiff. Jonathan M. Joseph, of counsel.

Kenneth S. Kessler, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

*OPINION AND ORDER*

HEWITT, Judge.

Before the court is plaintiff's Complaint, filed April 18, 2003, and Defendant's Motion to Dismiss, filed August 21, 2003, and the responsive briefing thereto.[1] Upon plaintiff's motion, *see* Motion for Oral Argument on Defendant's Motion to Dismiss (Pl.'s Mot.) at 1, oral argument was held on January 31, 2005, *see generally* Transcript of Oral Argument (Tr.). For the following reasons, the court GRANTS Defendant's Motion to Dismiss.

I. Background

Plaintiff, Pines Residential Treatment Center, Inc. (Pines), "owned and operated a mental health treatment facility" in Massachusetts which "was an approved provider of medical services to patients who qualified for assistance under the Medicare Act." Complaint (Compl.) ¶¶ 2–3. Plaintiff's complaint alleges that it sustained "a loss of $630,243"

---

1. The court considers the following responsive briefs: Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss (Pl.'s Opp'n), Defendant's Reply Brief (Def.'s Reply), plaintiff's Motion for Oral Argument on Defendant's Motion to Dismiss (Pl.'s Mot.), Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss (Pl.'s Supp'l Brief) and Defendant's Supplemental Reply Brief (Def.'s Supp'l Reply).

reimbursable under Medicare when it sold all its assets to a non-profit state hospital in May of 1996. *Id.* ¶ 3. Plaintiff claims that, "[f]or the fiscal year ending [FYE] ... May 31, 1996, [it] submitted Cost Reports [to the Medicare Intermediary for Massachusetts (Intermediary)[2]] claiming entitlement to reimbursement of [the] loss of $630,243 resulting from the sale of its assets." *Id.* ¶¶ 3–4. The Intermediary denied plaintiff's claim, *id.* ¶ 4, and plaintiff timely appealed to the Provider Reimbursement Review Board (PRRB or Board) of the Department of Health and Human Services (HHS) under the provisions of 42 U.S.C. § 1395oo (2000), *id.* ¶ 5.

Plaintiff's complaint asserts that the PRRB appeal process resulted in the Intermediary's "issu[ing] Notices of Revised Settlement Determinations on July 19, 2002, notifying [plaintiff] that ... [it] was entitled to reimbursement of $548,104 for the loss on sale of its assets." *Id.* ¶ 6, Exs. A, B (Notices of Revised Settlement of Determination (Notices) issued to plaintiff's Director of Reimbursement dated 7/19/02). The Notices advised plaintiff that checks "[would] be issu[ed]" for the amounts "due to [its] facility," *Id.*, Exs. A at 2, B at 1; "[h]owever," the Notices continued, "you should be aware that th[ese] check[s] will be applied against any previous outstanding liability that has been liquidated for which you do not have an approved repayment schedule," *id.* Plaintiff claims that the Notices "obligated the United States to pay [plaintiff] Medicare reimbursement in the amount of $548,104 ... [but that,] [n]otwithstanding [this obligation,] ... the United States has failed to pay ... the $548,104 which is due." *Id.* ¶¶ 7–8.

In April of 2003, plaintiff filed its complaint in this court, stating:

> This case involves a claim against the United States for payment of Medicare reimbursement as required by the Social Security Act, 42 U.S.C. § 1395 et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1491.
>
> . . . .

> [Plaintiff] respectfully requests that this Court enter judgment ... in the ... amount of $548,104 [due pursuant to the Notices issued July 19, 2002 by the Intermediary].

*Id.* ¶ 1; *id.* at 2.

Defendant moved, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims, to dismiss the complaint for lack of subject matter jurisdiction. Defendant's Motion to Dismiss (Def.'s Mot.) at 1. This court's jurisdiction to hear contract disputes against the federal government is preempted, defendant asserts, where the statute under which the dispute arises provides a comprehensive scheme for review in another forum. *Id.* at 14–15 ("The United States Supreme Court and the United States Court of Appeals for the Federal Circuit have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a 'precisely drawn, comprehensive and detailed scheme of review in another forum.'") (quoting *St. Vincent's Med. Ctr. v. United States,* 32 F.3d 548, 550 (Fed.Cir.1994)) (citing *United States v. Fausto,* 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988)). Because "[t]he Federal Circuit has held that the Medicare Act, which is the basis for [plaintiff's claim], contains ... a 'comprehensive administrative and judicial review scheme,'" defendant argues that this court's Tucker Act jurisdiction is preempted. *Id.* at 15 (quoting *St. Vincent's,* 32 F.3d at 549–50). "Rather, jurisdiction to consider the claim rests exclusively in Federal district [court] once Pines has exhausted its administrative remedies." *Id.* at 14 (citing 42 U.S.C. § 1395oo(f)(1)).

In its motion to dismiss, defendant produced evidence which added context to the Medicare reimbursement dispute forming the basis of plaintiff's complaint, *see* Def.'s Mot. at v (indexing ten exhibits attached to defendant's motion to dismiss), and plaintiff produced additional evidence in its responsive briefing, *see* Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss (Pl.'s Opp'n) at iii (indexing three exhibits attached to plaintiff's response). *See also* Tr. at 4:14–16 (statement of defendant's counsel) ("[T]here

---

**2.** The Department of Health and Human Services (HHS) may contract with private companies, or "intermediar[ies]," for assistance in administration of the Medicare program. *See* 42 U.S.C. § 1395h(a) (2000). Intermediaries may be responsible for making reimbursement determinations and payments to service providers. *See generally* 42 C.F.R. § 421.100 (2004).

is more to this story than that the government owes the [p]laintiff money."). While the additional evidence produced by the parties amplifies the court's understanding of the case, the evidence does not, as plaintiff asserted at oral argument, *see id.* at 23:21–22, 24:12, 32:1–10, preclude application of the Federal Circuit's holding that this court lacks jurisdiction over Medicare claims. *See St. Vincent's*, 32 F.3d at 549–50 ("Because the Medicare Act contains its own comprehensive administrative and judicial review scheme, there is no Tucker Act jurisdiction over Medicare reimbursement claims."); *id.* at 551 ("[U]nder the plain terms of [the Medicare Act], the Court of Federal Claims lack[s] jurisdiction to review ... Medicare reimbursement claim[s]."). To the contrary, the evidence produced by the parties reinforces the court's view that it cannot hear such disputes. *See* n. 3 *infra.* In the interest of clarifying its jurisdiction, the court summarizes the events that both parties allege preceded plaintiff's complaint.

A. Plaintiff Assumed the Medicare Provider Numbers of its Predecessor Corporation

Defendant asserts and plaintiff confirms that, on November 23, 1994, plaintiff's parent corporation acquired the assets of Heritage Hospital (Heritage), "an inpatient hospital facility ... [which had] participated in the Medicare program ... under Medicare provider numbers 22–0068 and 22–[S]068".[3] Def.'s Mot. at 8–9 (citing Ex. C ("Disclosure of Ownership and Control Interest Statement" form for Heritage filed with HHS dated 11/23/94), at 2 (showing "a change in ownership" dated 11/23/94 and referencing Medicare provider numbers "220068" and "225068 [sic]")); *see also* Tr. at 14:16–18 (statement of plaintiff's counsel) ("[Plaintiff] bought the assets from [its predecessor corporation] and ... operate[d] the same facility ... until May 31, 1996.").

The sales agreement between Pines and Heritage "envisioned that Pines was not going to assume [Heritage's] liabilities or its 'Medicare contracts.'" Def.'s Mot. at 8 (quoting Def.'s Mot., Ex. B ("Amended and Restated Agreement of Sale" between parent companies of Pines and Heritage), at 12–13). Instead, Heritage promised to "'use its best efforts to assist [Pines] in entering into a new contract with Medicare.'" *Id.* at 8–9 (quoting Def.'s Mot., Ex. B, at 13). Defendant asserted and plaintiff confirmed that,

[c]ontrary to the provisions of the sales agreement, ... Pines did not enter into a "new contract" with Medicare.

3. The record before the court evidences confusion as to plaintiff's second provider number. Defendant's motion refers to plaintiff's second provider number as "22–5068" and cites to a "Disclosure of Ownership and Control Interest Statement" filed by Heritage with the HHS on November 23, 1994 listing the second provider number as "225068". Def.'s Mot. at 8–9 (citing Ex. C). However, two of defendant's other exhibits list the second provider number with a capital "S" in place of the numeral "5": "22–S068". *Id.*, Ex. G (Settlement Agreement, Provider Reimbursement Review Board [PRRB] Case No. 99–2069 for fiscal year ending [FYE] 5/31/96), at 1 (listing second "Provider N[umber] ... 22–S068" for Heritage); *id.*, Ex. J (facsimile copy of "Final Settlement for FYE 11/23/94" for Heritage) (showing a $539,686.46 "[o]ffset from [provider number] 22S068" dated 09/30/96; *see also* Compl., Ex. B, at 1 (unnumbered page) ("Notice of Revised Settlement of Determination" for "Provider Number: 22S068"); Pl.'s Opp'n App. at 4, Ex. A (Letter from plaintiff to Intermediary dated 8/19/02) (requesting reimbursement for FYE 5/31/96 for second provider number "22S068").

Furthermore, plaintiff adds a second zero to the second provider number in its appeal to the PRRB, *see* Part I.D *infra*, for the Intermediary's failure to pay the Notices referenced in plaintiff's complaint. Def.'s Mot., Ex. H (Letter from plaintiff's counsel to PRRB Chair dated 1/14/03) (showing plaintiff's appeal for second provider number "22–S0068"). And exhibits produced by both parties omit the second provider number altogether. *See* Pl.'s Opp'n App. at 5, Ex. B (Letter from PRRB Chair to plaintiff's counsel dated 3/6/03), at 1 (dismissing the failure to pay appeal for Heritage under provider number "22–0068" without mention of a second provider number); Def.'s Mot., Ex. F ("Summary of Cost Report Settlement Amount Due to Provider" for report period ending 11/23/94 dated 9/19/96), at 5 (unnumbered page) (determining that $602,323 was due from provider number "220068" without mention of a second provider number).

These inconsistencies involving the second provider number (and its occasional omission) point to a possible factor involved in plaintiff's Medicare reimbursement dispute, but they are of no consequence in this case, nor can this court resolve them. Merely to avoid further confusion, the court refers to the second provider number as "22–S068"—the configuration appearing most often in evidence produced by both parties.

Rather than enter into a new Medicare contract, Pines continued to operate [Heritage] under the facility's existing Medicare provider agreement.... Plaintiff also continued to bill Medicare for all services rendered ... under the provider numbers previously assigned to [Heritage], 22–0068 and 22–[S]068. Consequently, there was never any interruption in the facility's certification as a Medicare provider or in the facility's eligibility to receive Medicare funding.

*Id.* at 9 (citing Def.'s Mot., Ex. C (Disclosure of Ownership and Control Interest Statement), at 1, Ex. D (Letter regarding purchase of Heritage addressed to the Health Care Financing Administration dated 5/17/96)); *see also* Tr. at 19:1–9 (colloquies between the court and plaintiff's counsel) ("[It's true that plaintiff] operat[ed] on the same number as [its predecessor corporation], notwithstanding that the ... sale agreement called for the number to change.... [Whether, for] the purposes of bookkeeping, it's the same company ... would be an issue that certainly would be before a PRRB if we appealed."); Tr. at 29:5–20 (colloquy between the court and plaintiff's counsel) ("[Plaintiff has] never said we didn't [use the predecessor's provider number], and we've never tried to hide that from the [c]ourt ... [W]e did, at one time, attempt to get a new number, but .... [we] didn't have a new number at the time [we] sold this property.").

Plaintiff operated as a Medicare provider until May of 1996, when it sold its assets to a non-profit state hospital and claims to have sustained "a loss of $630,243" reimbursable under Medicare. Compl. ¶ 3. Defendant alleges that four months later, in September of 1996, the Medicare Intermediary for Massachusetts "issued a[ ] N[otice] for [Heritage's] cost-reporting period ending November 23, 1994 [the date of sale between the parent corporations of Heritage and Pines]" determining that Heritage "had been overpaid for that period in the amount of $602,323." Def.'s Mot. at 10 (citing Def.'s Mot., Ex. F (Letter from Medicare Intermediary to Heritage dated 9/19/96), at 5). Plaintiff claims that the document attached as exhibit F to defendant's motion which "reflect[ed] the al-

leged $602,323 overpayment for FYE 1994 was directed to [Heritage], the Pines' predecessor[, and] [a]s a result, the Pines has had no opportunity to investigate and rebut the alleged overpayment." Pl.'s Opp'n App. at 2, Ex. A (affidavit of Richard Stephen Haller, Senior Vice President of Finance of Pines' parent corporation).

### B. Plaintiff and the Intermediary Entered into a Settlement Agreement Requiring the Issuance of Revised Notices

As plaintiff's complaint alleges, plaintiff "submitted Cost Reports [to the Intermediary] claiming entitlement to reimbursement of a loss of $630,243 resulting from the [May 21, 1996] sale of its assets." Compl. at ¶¶ 3–4. The Intermediary denied plaintiff's claim, *id.* at ¶ 4, and plaintiff appealed to the PRRB, *id.* at ¶ 5. Defendant points out that, "[a]lthough not discussed in Pines'[ ] complaint, prior to the date set for a hearing [before the Board], Pines and the [I]ntermediary entered into a written settlement agreement setting forth the terms for resolving the dispute administratively." Def.'s Mot. at 11 (record citation omitted).

Defendant produced a "Settlement Agreement" between plaintiff and the Intermediary made under the auspices of the PRRB "for the purpose of setting forth the terms and conditions of the parties' resolution of the above-captioned appeal." Def.'s Mot., Ex. G (PRRB Case No. 99–2069 for FYE 5/31/96 dated 4/23/02 as to the signature of the Intermediary and 5/1/02 as to the signature of the Provider), at 1; *see also* Def.'s Mot. at 11. The Settlement Agreement provided that the Intermediary would allow "partial recognition of [plaintiff's] claimed loss on sale [of assets]." Def.'s Mot. at 11; Def.'s Mot., Ex. G, at 2 ("[T]he Intermediary will issue ... revised N[otices] for the fiscal year ending May 31, 1996 to the Provider that reflect[ ] the [agreed upon settlement]."). Plaintiff's responsive briefing acknowledged the Settlement Agreement: "While Pines' appeal to the PRRB was pending, a written Settlement Agreement was reached in which the [I]ntermediary, acting as the agent of the Secretary [of HHS],

agreed it would issue revised N[otices] allowing $548,104 [in Medicare reimbursement] for the loss on sale for FYE 1996." Pl.'s Opp'n at 4 (citing Compl. ¶¶ 6–7).[4]

C. The Intermediary Allegedly Offset Amounts Due Plaintiff Against Overpayment to Plaintiff's Predecessor Corporation

Defendant explains that,

[r]ather than pay Pines the $548,104 [promised in the revised Notices] ... the [I]ntermediary offset that amount against the $602,323 overpayment made to Heritage for the cost-reporting period ending November 23, 1994. The [I]ntermediary's determination to make the offset was based upon the fact that Pines had assumed [Heritage's] provider agreement and the standard overpayment recovery procedures followed under the Medicare program.

Def.'s Mot. at 12 (citing Def.'s Mot., Ex. J (facsimile copy of "Final Settlement FYE 11/23/94" for Heritage)). According to evidence presented by defendant, the Intermediary made the offsets on July 24, 2002, see id., Ex. J (showing "Withholdings/Offset[s]" totaling $548,104 against Heritage under provider number 22–0068 on 7/24/02). If the July 24, 2002 date is correct, the alleged offsets were made by the Intermediary five days after its issuance of the Notices forming the basis of plaintiff's complaint, see Compl. ¶ 6. Plaintiff alleges that it did not receive notice of these offsets.[5] Pl.'s Opp'n at 12 (citing Pl.'s Opp'n App. at 1–4, Ex. A (affidavit of Richard Stephen Haller, Senior Vice President of Finance of Pines' parent corporation)); Pl.'s Mot. at 2, ¶ 3 ("Pines asserts that it was never notified of the ... offset, or [of defendant's intention] to make the offset, as required by federal regulations."); Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss (Pl.'s Supp'l Brief) at 4; Tr. at 24:8–9 (statement of plaintiff's counsel) ("The offset was on July 24th, ... but they never told us.").

D. Plaintiff Appealed the Intermediary's Failure to Pay

Defendant further asserts that, "[a]lthough not mentioned in the complaint, on January 14, 2003, Pines filed an appeal with the Board concerning the [Notices,] ... alleg[ing] that the [I]ntermediary had improperly failed to pay it for the amount due under the [N]otices." Def.'s Mot. at 12 (citation omitted). Defendant produced a letter from plaintiff's counsel to the PRRB timely appealing the July 2002 Notices:

In the approximately six (6) months since the N[otices] were issued, the Intermediary has not made payment to the Provider nor indicated when payment would be received by the Provider. In fact, the Intermediary has failed to respond to repeated requests concerning this matter made by the Provider.

The issue under appeal is whether the Intermediary must pay the Provider now that it has issued N[otices] indicating that payment is due. The Provider agrees with the amount set forth in the N[otices] and, therefore, there is no factual matter in dispute. The Provider requests that the Intermediary be ordered by the Board to make immediate payment to the Provider.

---

4. Paragraphs 6 and 7 of plaintiff's complaint make no reference to the Settlement Agreement; they merely state that "[a]s a result of the ... appeal to the ... Board," the Intermediary, "act[ing] as the agent of the United States," issued "Notices of Revised Settlement Determinations" showing plaintiff's "entitle[ment] to reimbursement of $548,104 for the loss on sale of its assets." Complaint (Compl.) ¶¶ 6–7. Plaintiff acknowledged in its responsive brief that "[t]he Settlement Agreement is Exhibit G to the United States' Motion to Dismiss." Pl.'s Opp'n at 4; see also Transcript (Tr.) at 15:10–13 (statement of plaintiff's counsel). At oral argument, plaintiff described its claim as being based "on the face of the [S]ettlement [A]greement and these two [No-

tices] issued pursuant to that [S]ettlement [A]greement ... because these [three] documents reflect an obligation of the government for a fixed, undisputed sum.... It's a contract." Tr. at 18:5–10 (statement of plaintiff's counsel).

5. The court notes, but is not in a position to evaluate, the possible role of the confusion about provider numbers in the circumstance of the alleged failure of plaintiff to receive notice of the offsets. See supra n. 3. Given such confusion, it is possible that the offsets were not, as plaintiff contends, "being kept under a bushel" by the United States. Tr. at 55:12–13 (statement of plaintiff's counsel).

*Id.,* Ex. H (Letter from plaintiff's counsel to PRRB Chair dated 1/14/03).

### E. The PRRB Dismissed Plaintiff's Failure to Pay Appeal for Lack of Jurisdiction

Defendant also pointed to the subsequent dismissal by the PRRB of plaintiff's appeal for lack of jurisdiction: "On March 6, 2003, the Board dismissed plaintiff's appeal [for lack of] jurisdiction to consider plaintiff's failure-to-pay claim." *Id.* at 12 (citing Def.'s Mot., Ex. I).[6] Defendant produced the PRRB dismissal letter, which stated:

[T]he Provider is appealing the fact that the Intermediary has not paid the Provider for amounts of increased reimbursement on revised Notices of Program Reimbursement .... The Provider agrees with the amount set forth in the N[otices] and, therefore [,] there is no factual matter in dispute. The Provider requests that the Intermediary be ordered by the Board to make immediate payment to the Provider.

Pursuant to Section 1878(a) of Title XVIII of the Social Security Act, as amended[,] and 42 C.F.R. §§ 405.1835 and .1841, a provider has a right to a hearing before the Board with respect to a cost claimed on a timely filed cost report if it is dissatisfied with the final determination of the intermediary ....

In this case, there is no final determination with which the Provider is dissatisfied and no reimbursement amount in controversy. Therefore, the Board finds that it does not have jurisdiction over the appeal, and hereby dismisses the appeal. *Review of this determination is available under the provisions of 42 C.F.R. §§ 405.1875 and .1877 (Section 1878(f)(1) of the Social Security Act, as amended.)[.]*

Pl.'s Opp'n App. at 5, Ex. B (Letter from PRRB Chair to plaintiff's counsel dated 3/6/03) (emphasis added). The dismissal letter notes as "[e]nclosures ... [s]ection 1878(f)(1) of the Social Security Act, as amended[, and] 42 C.F.R. §§ 405.1875 and .1877," *id.* at 6, Ex. B.

In a footnote to its responsive brief, plaintiff acknowledged its appeal of the Intermediary's failure to pay and the subsequent dismissal of the appeal by the PRRB for lack of jurisdiction:

Prior to filing this suit, a timely administrative appeal to the PRRB was filed by Pines, complaining of the [I]ntermediary's failure to pay ... pursuant to the Settlement Agreement. The [I]ntermediary was copied on the Pines' notice of appeal but made no response to the appeal. The PRRB found that it did not have jurisdiction ... because *"there is no final determination* [of the [I]ntermediary] *with which the Provider* [Pines] *is dissatisfied and no reimbursement amount in controversy."*

Pl.'s Opp'n at 7 n. 1 (citing Pl.'s Opp'n App. at 5, Ex. B) (emphasis in original). Little more than a month after notice of the PRRB's dismissal for lack of jurisdiction, *see* Pl.'s Opp'n App. at 5, Ex. B (Letter from PRRB Chair to plaintiff's counsel dated March 6, 2003), plaintiff filed its complaint in this court, *see* Compl. (date stamped April 18, 2003).

Plaintiff stated at oral argument that it had not appealed the PRRB dismissal for lack of jurisdiction of its failure to pay appeal. *See* Tr. at 19:11–13 ("[There are no] appeals of any nature pending regarding this dispute.") (colloquy between the court and plaintiff's counsel). *But see id.* at 19:15–17 ("We have not abandoned appeals. We haven't failed to appeal, and I'll get to that toward the end [of oral argument], Your Honor.") (statement of plaintiff's counsel). When questioned by the court as to why plaintiff had not appealed the PRRB's dismissal for lack of jurisdiction, plaintiff's counsel responded: "[I]t was clear that the PRRB had said exactly what the [Medicare] statute said, and I don't think anything like that would have been anything other than futility." *Id.* at 33:2–5.

---

6. Defendant's Exhibit I is an incomplete copy of the PRRB letter dismissing plaintiff's appeal. *See* Def.'s Mot., Ex. I (showing only "Page 2" of a letter signed by PRRB Chair). Plaintiff produced a complete copy of this letter in its responsive brief. *See* Pl.'s Opp'n App. at 5, Ex. B (Letter from PRRB Chair to plaintiff's counsel dated 3/6/03). The court refers to the complete copy of the dismissal letter produced by plaintiff in response to defendant's Motion to Dismiss.

## II. Discussion

Defendant contends that plaintiff may not invoke this court's Tucker Act jurisdiction "because the subject matter of the purported settlement is 'wholly based on a Medicare reimbursement dispute' [and] the administrative and judicial review procedures set forth in the Medicare Act are the proper, controlling procedures." Def.'s Mot. at 18 (quoting *Bloomington Hosp. v. United States,* 29 Fed. Cl. 286, 293 (1993)). Defendant urges that "[t]he subject matter of the settlement agreement, to compel the [I]ntermediary to make certain administrative adjustments, is sufficiently embroiled in the Medicare Act regulatory scheme that jurisdiction to enforce the agreement cannot lie in this Court." Defendant's Supplemental Reply Brief (Def.'s Supp'l Reply) at 3 (citing *Bobula v. Dep't of Justice,* 970 F.2d 854, 858 (Fed.Cir.1992)).

Defendant also argues that, "[e]ven if plaintiff attempts to characterize its action as a suit to enforce a settlement agreement that could otherwise be cognizable in the Court of Federal Claims under the Tucker Act, this Court has no jurisdiction." Def.'s Mot. at 18 (footnote and citation omitted). According to defendant, if plaintiff founded its complaint on the Settlement Agreement alone, its claim would still fail to invoke jurisdiction because

> [a]ny claim by Pines that the [I]ntermediary violated the settlement agreement would be without merit. The agreement did not require the [I]ntermediary to pay to Pines any additional Medicare reimbursement. Rather, ... the [I]ntermediary agreed only to ... "issue ... revised N[otices] ... [recognizing plaintiff's claimed loss on sale of assets,]" [and][t]he [I]ntermediary fully complied with these requirements.

*Id.* at 18 n. 6 (quoting Def.'s Mot., Ex. G at 2) (citing Compl., Exs. A, B); *see also* Def.'s Supp'l Reply at 3 ("As is clear from Pines'[ ] complaint, ... there is actually no real dispute about whether the [Settlement] [A]greement has been complied with.").

Moreover, defendant argues, plaintiff must "follow the Medicare Act appeal procedures even if [plaintiff] believes that the [B]oard has improperly determined that it lacks jurisdiction over [plaintiff's] claims." Def.'s

Mot. at 18; *see also id.* at 18 ("[A] provider is obligated to appeal the dismissal of its appeal to the Secretary [of HHS] and, ultimately, to the [federal] district court.") (citing 42 C.F.R. § 405.1875(a) and *St. Vincent's,* 32 F.3d at 551.)

Plaintiff insists that the United States is "incorrect[ ]" in its argument that "because Pines' suit seeks recovery of Medicare reimbursement, Pines' exclusive remedy lies in the administrative appeal process established under the Medicare Act." Pl.'s Opp'n at 5 (citation omitted). Plaintiff argues that the law should be interpreted differently:

> The hallmark of the Medicare Act administrative appeal process is the provider's *dissatisfaction* with a determination by the intermediary as to the *amount* of reimbursement due or the failure of the intermediary to make a determination. The Complaint in this case makes it clear that the [I]ntermediary has made a timely final determination that Pines is due $548,104 for FYE 1996 and that Pines is not dissatisfied with that determination. In fact, Pines has signed a Settlement Agreement memorializing its agreement with the [I]ntermediary's determination. Simply stated, the prerequisites for the administrative appeal process under the Medicare Act do not exist.

*Id.* at 7 (footnote omitted) (citing *Appalachian Reg'l Healthcare, Inc. v. United States,* 999 F.2d 1573, 1575 (Fed.Cir.1993)). Plaintiff further contends that the PRRB's determination that it lacked subject matter jurisdiction over plaintiff's failure to pay appeal makes "clear that there is no administrative appeal available to Pines under the Medicare Act." *Id.* at 7 n. 1 (citing Pl.'s Opp'n App. at 5, Ex. B (Letter from PRRB Chair to plaintiff's counsel dated 3/6/03)); *see also* Tr. at 33:2–5 ("[I]t was clear that the PRRB had said exactly what the [Medicare] statute said, and I don't think anything like that would have been anything other than futility.") (statement of plaintiff's counsel).

### A. Standard of Review

Under a motion to dismiss for lack of subject matter jurisdiction, the court construes facts alleged in the complaint in plain-

tiff's favor. *Morris v. United States,* 33 Fed. Cl. 733, 741 (1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988) (noting that facts must be presumed true and correct). The court may receive evidence outside the complaint to resolve jurisdictional issues of fact if defendant challenges plaintiff's foundation for jurisdiction, thus shifting to plaintiff the burden of establishing jurisdiction by a preponderance of evidence. *Reynolds,* 846 F.2d at 747; *Morris,* 33 Fed.Cl. at 742.

B. The Administrative and Judicial Review Scheme of the Medicare Act Preempts this Court's Jurisdiction Over Plaintiff's Medicare Reimbursement Dispute

The Medicare Act, 42 U.S.C. §§ 1395–1395ggg (2000), establishes "a national program of health insurance for the aged and disabled" and a "voluntary supplemental insurance program ... for the payment of physicians' and other health services." Def.'s Mot. at 2–3. These programs are administered through HHS, which employs private contractors ("intermediaries") to assist in making reimbursement determinations and actual payments to hospitals and health care facilities caring for Medicare beneficiaries ("provider[s]"). 42 C.F.R. § 421.100 (2004). Intermediaries review yearly cost reports to "determine[ ] the amount due, or owed by, [providers] for the period" and must "offset any underpayment determined for the period against any overpayment identified for a prior period." Def.'s Mot. at 4 (citing 42 C.F.R. §§ 405.371, 405.1803(c), 413.64(f), and 413.960(c); and 42 U.S.C. 1395g(a) (directing the government to reimburse providers "with necessary adjustments on account of previously made overpayments or underpayments")).

Medicare providers dissatisfied with an intermediary's reimbursement determination must follow "specific administrative and judicial review procedures" set out in the Medicare Act. *Id.* at 4–5. Providers may appeal to the PRRB if the amount in controversy is at least $10,000 and the provider files within

a specified time; providers unhappy with the PRRB's determination may seek judicial review in "the district court of the United States for the judicial district in which the provider is located." 42 U.S.C. § 1395oo(a)(2), (f)(1). However, if the provider appeals "a question of law or regulations relevant to the matters in the controversy," and the PRRB "determines ... that it is without authority to decide the question," § 1395oo(f)(1), the provider can seek "expedited judicial review in district court without exhausting all administrative remedies." Def.'s Mot. at 5 (citing 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1842).

The Federal Circuit has held that the "specific and comprehensive scheme for administrative and judicial review of Medicare reimbursement claims" preempts this court's Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1), which covers claims against the United States arising from express or implied contracts. *St. Vincent's,* 32 F.3d at 550; *see also Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 (Fed.Cir.2001) (holding jurisdiction in Court of Federal Claims preempted when Congress has provided a "specific and comprehensive scheme for administrative and judicial review" of the subject matter); *Appalachian,* 999 F.2d at 1577 (recognizing that jurisdiction exists under Tucker Act "to resolve claims for Medicare reimbursement, in the absence of specific legislation providing that judicial review be available exclusively elsewhere")(internal quotation marks omitted); *Harris v. United States,* 841 F.2d 1097, 1100–01 (Fed.Cir.1988) (discussing a circumstance in which another statutory scheme "repeal[s] by implication ... the provisions of the Tucker Act"); *Bloomington Hosp. v. United States,* 29 Fed. Cl. 286, 292 (1993) (citing Supreme Court authority for the principle that "a remedy furnished by an explicit, detailed statute preempts a more general remedy"). Tucker Act jurisdiction remains for Medicare reimbursement claims which are not reviewable under section 1395oo(f)(1) because the amount in controversy is less that $10,000, or because the claims involve cost-reporting periods prior to 1973. *See Appalachian,* 999 F.2d at 1577. Although breach of contract claims involving settlement agreements with the

government may invoke this court's Tucker Act jurisdiction, settlement agreements made in the context of an "integrated scheme of administrative and judicial review" may only be enforced according to the procedures provided by such an "integrated scheme." *Bobula*, 970 F.2d at 858; *see also Griswold v. United States*, 61 Fed.Cl. 458, 465 (2004) ("This court has consistently held that it lacks jurisdiction to hear claims alleging the breach of a Title VII Settlement Agreement due to the comprehensive statutory [review] scheme established under Title VII of the Civil Rights Act."); *Lee v. United States*, 33 Fed.Cl. 374, 380 (1995) (dismissing a claim for breach of contract founded in a settlement agreement arising from Title VII claims).

Even absent preemption, the Federal Circuit held in *St. Vincent's* that alternate grounds exist for precluding this court's jurisdiction over Medicare reimbursement disputes. First, a provision of the Social Security Act "incorporated by reference into the Medicare Act" at 42 U.S.C. § 1395ii, "unequivocally provides that 'no action' arising under the Medicare Act shall be brought in any forum or before any tribunal that is not specifically provided for in the Medicare Act." *St. Vincent's*, 32 F.3d at 550–551 (quoting 42 U.S.C. § 405(h)). Furthermore, the "well-established doctrine that regulated parties must exhaust all available administrative remedies before they receive judicial review where, as here, Congress has explicitly so required" bars judicial review of Medicare reimbursement disputes in which plaintiffs have not exhausted their administrative remedies. *Id.* at 552 (citing *Heckler v. Ringer*, 466 U.S. 602, 607, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). Although plaintiffs would

> no doubt prefer[ ] an "immediate appeal . . . rather than the often lengthy administrative review process" required in the PRRB[,] . . . [they] must "adhere to the administrative procedure which Congress has established for adjudicating [its] Medicare claims." . . . *Even if . . . [plaintiff's] PRRB appeal will prove unsuccessful, [plaintiff] still has an obligation to satisfy the prerequisites for judicial review under the Medicare Act.*

*Id.* (quoting *Ringer*, 466 U.S. at 605, 619, 104 S.Ct. 2013 (alterations in original) (citations omitted)) (emphasis added).

Nowhere in plaintiff's briefing was the holding in *St. Vincent's* acknowledged or discussed. *See* Tr. at 20:21–24 (statement of the court) ("[T]he biggest difficulty for [the court] is the failure of the [p]laintiff[ ] to deal with *St. Vincent[' ]s* and related cases."); *id.* at 28:1–3 (statement of plaintiff's counsel) ("I want to address [*St. Vincent's* in oral argument] because I don't want the Court to think we're trying to duck the case."). Plaintiff's belated attempts at oral argument to distinguish its circumstances from those in *St. Vincent's*, *see id.* at 23:21–22, 24:12, 32:1–10 (statements of plaintiff's counsel), are inapposite. Plaintiff argued that *St. Vincent's* did not

> involve[ ] a party in the position we are in, who had followed *[e]very administrative step possible,* been told that the government administrative process didn't apply to them. [The plaintiff in *St. Vincent's*] had failed to complete the administrative process under the Medicare Act. We have been through it twice,—once, to reach a settlement, and the second time, to try and get paid—and we've been told there is no jurisdiction.

*Id.* at 32:3–13 (statement of plaintiff's counsel) (emphasis added).

Plaintiff's admission that "[there are no] appeals of any nature pending regarding this dispute," *id.* at 19:11–13 (colloquy between the court and plaintiff's counsel), belies its assertion that it "ha[s] followed [e]very administrative step possible" to "try and get paid," *id.* at 32:3–13. Plaintiff's assertion seems particularly off base in light of plaintiff's own production of a dismissal letter from the PRRB pointing plaintiff toward its administrative remedies, *see* Pl.'s Opp'n App. at 5, Ex. B—remedies which properly culminate in judicial review of the administrative process in federal district court, *see* 42 C.F.R. § 405.1877(f) ("An action for judicial review must be brought in the District Court of the United States for the judicial district in which the provider is located . . . or in the District Court for the District of Columbia."); 42 U.S.C. § 1395oo(f)(1) (same). *See also*

**316**

Pl.'s Opp'n App. at 5, Ex. B (Letter from PRRB Chair to plaintiff's counsel dated 3/6/03) ("Review of this determination [of the Board's lack of jurisdiction] is available under the provisions of 42 C.F.R. §§ 405.1875 and .1877 (Section 1878(f)(1) of the Social Security Act, as amended.)"); *St. Vincent's,* 32 F.3d at 551.

Plaintiff's attempts to characterize its claim as one falling completely outside of the administrative scheme established under Medicare are incorrect and unavailing. *See* Pl.'s Opp'n at 7 (arguing that, because Pines is not dissatisfied with the Intermediary's determination of the amount due to Pines and seeks only to compel payment, there is no dispute that qualifies for the Medicare appeal process); *id.* at 7 n. 1 ("[T]here is no administrative appeal available to Pines under the Medicare Act."); Tr. at 33:5–6 (statement of plaintiff's counsel) (arguing that an appeal of the PRRB's dismissal for lack of jurisdiction would be "futil[e]" because "there is no amount in dispute."); *id.* at 54:15–19 (statement of plaintiff's counsel) ("[T]aking [the Board's dismissal] up through some further appellate process . . . would have done no good. We would have ended up here [in the Court of Federal Claims], no matter what."). The holding in *St. Vincent's* speaks squarely to plaintiff's case: "Even if . . . [plaintiff's] PRRB appeal will prove unsuccessful, [plaintiff] still has an obligation to satisfy the prerequisites for judicial review under the Medicare Act." 32 F.3d at 552.

Furthermore, plaintiff's statement at oral argument that "[t]he government has not cited a single case for [the] proposition . . . that either the secretary or the [I]ntermediary has jurisdiction to enforce payment by the government," Tr. at 32:14–18, does nothing to shift plaintiff's burden of establishing jurisdiction to defendant, *see* Part II.A *supra* (noting that the burden of establishing jurisdiction by a preponderance of the evidence shifts to plaintiff where defendant challenges plaintiff's foundation for jurisdiction and the court receives evidence outside the complaint) (citing *Reynolds,* 846 F.2d at 747, and *Morris,* 33 Fed.Cl. at 742).

III.   Conclusion

For the foregoing reasons, the court finds that it lacks subject matter jurisdiction over plaintiff's claim and, accordingly, GRANTS defendant's Motion to Dismiss. The Clerk of the Court is directed to dismiss plaintiff's complaint without prejudice. No costs.

IT IS SO ORDERED.